(626 P.2d 1202)
No. 51,668

REGINALD D. SPEECE, JR., *Plaintiff-Appellant,* v. UNIFIED SCHOOL DISTRICT NO. 420, OSAGE COUNTY, STATE OF KANSAS; DONALD WYMORE, CAROLYN ROSETTA, JAMES C. MARTIN, TOM LANE, and FRANK MERSMANN, individually and as members of the Board of Education of such Unified School District; JAMES P. LAWLESS and LEONARD McANARNEY as members of the Board of Education of such Unified School District; J. C. STOLFUS, individually and as Superintendent of such Unified School District; KENNETH F. KERN, individually and as Principal of Osage City High School in such Unified School District; MABEL LOFCREN, as Clerk of such Board of Education, *Defendants-Appellees.*

Opinion filed April 24, 1981.

*Keith A. Greiner,* of Keith A. Greiner, Chartered, of Emporia, for appellant.

*Stephen Jones,* of Coffman, Jones & Gilliland, of Lyndon, for appellees.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

FOTH, C.J.: Plaintiff is a school teacher. Defendant is a school district for which he worked as an untenured first year teacher during the school year 1976-77. In the final analysis, plaintiff's petition claimed extra pay for the school year 1976-77 and total

breach of an alleged teaching contract for the year 1977-78.[1] This appeal is from an order dismissing the petition for lack of jurisdiction.

With one important exception, the facts surrounding plaintiff's relationship with the defendant district are undisputed. During the year he worked for the district he performed certain coaching duties for the Osage City High School. Neither the extra duties nor any extra compensation for them was included in his teaching contract. Attempts to negotiate with school administrators for extra compensation were fruitless. On March 14, 1977, the board voted not to renew plaintiff's contract for the following year, and notified plaintiff in writing the next day.

On April 11, 1977, plaintiff appeared before the board with his attorney and requested that the board (a) reverse its decision of March 14, to terminate him, (b) allow him thirty days in which to accept or reject a contract of employment and (c) pay him $294.00 for the coaching duties performed by him during the 1976-77 school year. Plaintiff's attorney wrote a letter to the board dated April 18, 1977, restating plaintiff's request. On April 18, 1977, the board voted to accede to plaintiff's requests, including payment of the $294.00 if "legally permissible." This decision was communicated to plaintiff by letter.

What happened next is controverted. Plaintiff claims that within the thirty-day period he met with the district's superintendent and, among other things, told him that he would teach the following year. If this conversation occurred, it was apparently never communicated to the board.

On July 11, 1977, at a regularly scheduled meeting the board voted that plaintiff did not have a contract with the district for 1977-78 because of his assumed failure to respond to the board's offer of April 18. The board also voted not to pay the $294.00 on advice of its attorney that to do so would violate the terms of the district's negotiated salary schedule.

Plaintiff filed a notice of appeal with the board on August 15, 1977, and his first petition in the district court on August 23, 1977. Process was served on each member of the board and on the board as an entity. Thereafter plaintiff's theories followed a

---

1. Additional claims, including one for slander, were asserted at one stage of the proceeding below but were separately dismissed. On oral argument before us, those claims were formally abandoned.

somewhat tortuous path. At the outset he relied on the continuing contract law for his primary breach of contract claim. However, with permission of the court an amended petition was eventually filed which, insofar as we are presently concerned, asserted the two claims mentioned above: (1) $294.00 for the 1976-77 extra coaching duties; (2) $10,074 for lost salary for 1977-78. As to the latter item the amended petition, when liberally construed, simply asserts that the offer of employment was made on April 18, 1977, and was accepted by him within the 30 days specified and before the board's action on July 11, 1977. Neither claim was decided on the merits; as previously stated the petition was dismissed on jurisdictional grounds.

Lack of jurisdiction was premised on the trial court's conclusion that plaintiff's only avenue of judicial redress was by way of an appeal under K.S.A. (now 1980) Supp. 60-2101(d), the omnibus appeal provision of our code. Both his notice of appeal and his first petition in the district court were filed more than the statutory 30 days after the board's decision. If the board's action was quasi-judicial, as the trial court concluded, then the court was correct in its further conclusion that it lacked jurisdiction. If, on the other hand, the board's action was executive or administrative in nature, the action was timely brought as an ordinary breach of contract action and the court erred in dismissing it.

Much has been written recently about the distinction between quasi-judicial functions on the one hand and executive or administrative functions on the other. The tests need not be restated here. Cases finding the function in question to be quasi-judicial include *Brinson v. School District,* 223 Kan. 465, 576 P.2d 602 (1978) (determining after a formal hearing whether a teacher had resigned), and *Schulze v. Board of Education,* 221 Kan. 351, 559 P.2d 367 (1977) (determining after a formal hearing whether a teacher's conduct violated rules of employment). Cases where the function was found to be executive or administrative include *Linnens v. Board of Education of U.S.D. No. 408,* 3 Kan. App. 2d 662, 600 P.2d 152, *rev. denied* 227 Kan. 927 (1979) (determining that a school should be closed) and *Concannon v. Board of Linn County Comm'rs,* 6 Kan. App. 2d 20, 626 P.2d 798 (1981) (denial of a county employee's claim for wages).

The presence of a formal hearing does not guarantee that the resulting decision is quasi-judicial—indeed, executive and legis-

lative determinations are often made only after affording interested persons an opportunity to be heard. The *absence* of a hearing, however, militates strongly against the conclusion that a quasi-judicial decision was reached. Three recent teacher contract cases serve to illustrate. In *Brinson,* the district had adopted a grievance procedure affording a full "due process" hearing to a terminated teacher before the enactment of K.S.A. 72-5436 *et seq.,* which now guarantees such a hearing to tenured teachers. The court held the board's conclusion to be a quasi-judicial decision, reviewable by appeal under what is now K.S.A. 1980 Supp. 60-2101(*d*). In *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 605 P.2d 105 (1980), the tenured teacher's nonrenewal was governed by the new "due process" act of 1974 requiring a formal hearing. Again, an appeal was available under 60-2101 because, among other things, section 72-5443 specifically so provides.

On the other hand, in *Boatright v. Board of Trustees of Butler County Junior College,* 225 Kan. 327, 590 P.2d 1032 (1979), the tenured teacher whose contract was not renewed had no opportunity for a hearing either by rule of the governing board or by statute. In holding that he was entitled to maintain an independent action for breach of contract the court observed:

"It should be noted that at the time the dispute in this case arose, the due process procedure provided for in K.S.A. 1974 Supp. 72-5436 *et seq.,* was not applicable to community junior college teachers. They were brought under the act in 1975. The due process procedure, established by these statutes, provides for a hearing before an impartial hearing committee composed of appointees of the board and the teacher in the event of a dispute over a contract termination. There was no provision for an impartial hearing to be afforded the plaintiff at the time this dispute arose.

"The grievance procedure in the negotiated contract did not provide for an evidentiary hearing before any impartial hearing body. The only procedure provided was for continuing negotiations which, it was hoped, would resolve the dispute. In the present case, plaintiff Boatright followed carefully the prescribed grievance procedure, which did not include an impartial administrative hearing as contemplated by *Brinson. When the grievance of the teacher, Boatright, could not be resolved, he properly filed his action in the district court to recover damages for breach of his employment contract.* In determining the action, the district court was required to hear the case de novo, weigh the evidence presented at the trial, and make its own independent findings of fact and conclusions of law. *When plaintiff Boatright appeared in district court, this was the first opportunity he had been afforded to call witnesses and to present evidence in support of his position."* 225 Kan. 331-32. (Emphasis added.)

It then becomes necessary to consider this plaintiff's status and

rights at the time the board made its various decisions in the spring of 1977. First, there was the decision not to renew, communicated on March 15, 1977. That decision met the deadline then provided by the continuing contract law, K.S.A. 72-5411. Plaintiff was not tenured, and was not entitled to the "due process" hearing required by K.S.A. 72-5436 *et seq.*, for tenured teachers; at that point he had no contract for the following year nor any right to a contract.

Then, on April 18, the board offered to rehire him for the next year and gave him thirty days to accept. As we see it, his position at that time was the same as that of any other prospective teacher to whom the board might have made a similar offer. He could accept or reject at any time within the thirty days; at the same time the board could have withdrawn the offer at any time before acceptance without incurring liability. Had it done so, such a teacher would have had no right to a hearing nor any cause of action for breach of contract.

Whether plaintiff accepted or not is still an unresolved factual question.

Finally, on July 11, the board concluded that plaintiff had not accepted the offer and proceeded about its other business. No notice of any hearing was given to plaintiff, no "grounds" for non-renewal were specified, no evidence was received, no hearing was held. As we see it, none was required—at least under the board's view of what it was doing. It was not terminating a teacher's contract; it was simply reassuring itself that it had not hired one. We simply cannot fit this kind of determination into the mold of a quasi-judicial determination recognized in the cases cited above.

Of course, if the board was mistaken and its offer had in fact been accepted, then its decision *amounted* to a refusal to honor its contract. If that is so, it may be liable in damages for breach, just like any other governmental entity. Again, however, the decision to breach (if that is what it was) was an executive, not a quasi-judicial decision.

As to the $294.00 claim for extra salary for extra duty, the board's disallowance of that claim is just like any public body's disallowance of a claim. City and county governing bodies disallow both tort and contract claims at almost every meeting. As the Supreme Court said as long ago as *Comm'rs of Leavenworth Co. v. D. J. Brewer*, 9 Kan. 307, 319 (1872):

"A claim presented to the county commissioners is simply a claim presented to the county, and a refusal by them to pay it is simply a refusal of the county to pay it. And where a county refuses to pay a claim against it there seems to be no good reason why it may not be sued as well as any other corporation, or as any individual, under like circumstances. It is true, that the county commissioners in some cases act in a kind of *quasi* judicial character, and when they do so act their determinations are final unless appealed from. *But when they allow or disallow a claim against their county—against their principal—they do not act in a judicial capacity. They are not then a court, acting impartially between two contending parties, but they are simply the agents of one of the parties, and acting for such party.*" (Emphasis added.)

Thus, a governing body's action may set the stage for potential lawsuits, but it has never been thought that a disappointed claimant could only appeal from the adverse decision.

The judgment must be reversed and the case remanded for determination of plaintiff's two breach of contract claims.

Reversed and remanded.