(951 P.2d 960)
No. 77,414

JOHN SCHMIDT, *Appellant*, v. BOARD OF EDUCATION, U.S.D. No. 322, Onaga, Havensville, Wheaton, *Appellee*.

Opinion filed December 24, 1997.

*David M. Schauner*, of Topeka, for appellant.

*Kristine A. Larscheid* and *J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before GERNON, P.J., KNUDSON, J., and VAN HAMPTON, District Judge, assigned.

GERNON, J.: This appeal centers on the interpretation of a teaching contract clause which allows higher pay for college hours earned subsequent to a bachelor's degree.

John Schmidt appeals the granting of summary judgment to the Board of Education, U.S.D. No. 322 (Board).

The contract at issue is a provision of a master agreement which had been collectively negotiated between the Onaga Local Educators Association and the Board. The first page of each master

agreement states: "As used in this Agreement the term 'teacher' shall mean and include all certified employees of the school district except administrators and substitute teachers." The terms of the agreements further establish a salary schedule based on a bachelor's degree, with increases in salary based upon the accumulation of additional college credit hours of education or advanced degrees. The agreements recite:

"Teachers shall be paid in accordance with the attached salary schedule. *Hours shall mean semester hours earned by teachers subsequent to being awarded the BS, BA, or equivalent degree.* Said hours shall also meet one of the following requirements:

    a) Be in a subject matter required or eligible for credit for certification by the Kansas State Board of Education.

    b) Be in the teacher's area of certification.

    c) Be creditbale [*sic*] for the next higher degree in the teacher's area of certification.

    d) Hours in other categories shall require approval by the superintendent based upon his/her subjective opinion as to whether such hours will be beneficial to the teacher involved in the area of approved instruction. Requests for approval shall be made by the teacher in a dated letter form stating intent for said study. Approval or disapproval shall be made by the superintendent in a dated formal letter." (Emphasis added.)

The master agreements established a salary schedule that was based on a bachelor's degree, but the salary was increased upon the accumulation of additional credit hours of education or advanced degrees.

Despite the contract provisions, the issues to resolve this appeal are driven by the facts specific to Schmidt.

In May 1984, Schmidt earned a Bachelor of Science (B.S.) degree in Exercise Science from Kansas State University. Later, in the spring semesters of 1985 and 1986, Schmidt earned an additional 54 hours of college credit that were necessary for him to obtain his Kansas teaching certificate. He subsequently received teaching certificates from the Kansas State Board of Education in the areas of physical education and social studies.

Schmidt obtained employment with U.S.D. No. 322 in Pottawatomie County, Kansas, for the school years 1991-92, 1992-93, 1993-94, and 1994-95. Schmidt executed an annual con-

tract with the Board for each of those school years which recited the salary he would receive for the respective school year.

Schmidt's first teaching certificate was issued *after* the spring semester of 1986. Schmidt earned no hours, graduate or undergraduate, after the spring semester of 1986.

Schmidt initiated grievance procedures in 1994. The grievance procedures were followed, hearings were held, and Schmidt's position was rejected. He filed suit 126 days after the final denial of his grievance by the Board, contending that his accumulated hours entitled him to be placed in a higher salary schedule. He now appeals the summary judgment ruling of the district court.

## Jurisdiction

The Board contends that it was acting in a quasi-judicial manner when it rejected Schmidt's claim.

The significance of the Board acting in a quasi-judicial manner would be that the decision concerning compensation would fall within the provisions of K.S.A. 60-2101(d). This statute would require Schmidt to file an appeal with the Board within 30 days of its final decision.

Case law suggests that whether a board is acting in a quasi-judicial capacity depends on the specific facts and nature of the dispute.

In *Schulze v. Board of Education*, 221 Kan. 351, 559 P.2d 367 (1977), our Supreme Court held that 60-2101(a) precluded Schulze's injunction action concerning a letter of reprimand in his personnel file. Schulze, instead of appealing from the board's action, had filed suit seeking an injunction and damages and other relief. The court held that under the facts before it and because of the nature of the action and the basis of the action (the reprimand), the board was exercising a judicial or quasi-judicial function. Therefore, Schulze had failed to comply with the statute, and his collateral, independent suit was not allowed.

Schmidt argues that other Kansas cases are closer to the case here and that these cases support his position.

Schmidt refers us to *Boatright v. Board of Trustees of Butler County Junior College*, 225 Kan. 327, 334, 590 P.2d 1032 (1979),

in which the Supreme Court allowed an independent action for damages based on a claim of failure to renew an employment contract.

In our view, a closer case, serving as a model, is *Speece v. U.S.D. No. 420*, 6 Kan. App. 2d 71, 626 P.2d 1202, *rev. denied* 229 Kan. 671 (1981).

In *Speece*, Speece, an untenured teacher, appeared before the school board with his attorney seeking, in part, additional compensation for performing certain duties beyond those stated in his teaching contract for the 1976-77 school year and the reversal of its decision not to renew his employment contract. The board voted to concede to Speece's requests if it was legally permissible. Three months later, at a regularly scheduled meeting, the board voted not to pay Speece for the extra duties based on its attorney's advice that payment would violate the school district's negotiated salary schedule. The board also voted that Speece did not have a contract with the district for the 1977-78 school year because it assumed that he did not accept its concession offer.

Speece then filed an action against the school board seeking additional compensation for performing the extra duties in the 1976-77 school year and for breach of an alleged contract for the subsequent school year. The trial court ruled that Speece's only avenue of judicial redress was through filing an appeal under 60-2101(d) and dismissed the petition for lack of jurisdiction.

This court reversed, finding the board did not act in a quasi-judicial manner in denying Speece's claims. 6 Kan. App. 2d at 75. This court emphasized the presence of a formal hearing does not guarantee that the resulting decision is quasi-judicial, but the absence of a hearing strongly suggests that a quasi-judicial decision was not reached. 6 Kan. App. 2d at 73-74. We found a formal hearing was not even necessary because the school board was not terminating Speece's contract but was assuring itself that it had not hired Speece as a teacher. 6 Kan. App. 2d at 75. This court further concluded that the board's refusal to pay for the extra duties was similar to any public body's denial of a contract claim, noting:

" 'A claim presented to the county commissioners is simply a claim presented to the county, and a refusal by them to pay it is simply a refusal of the county to

pay it. And where a county refuses to pay a claim against it there seems to be no good reason why it may not be sued as well as any other corporation, or as any individual, under like circumstances. It is true, that the county commissioners in some cases act in a kind of *quasi* judicial character, and when they do so act their determinations are final unless appealed from. *But when they allow or disallow a claim against their county—against their principal—they do not act in a judicial capacity. They are not then a court, acting impartially between two contending parties, but they are simply the agents of one of the parties, and acting for such party.'* (Emphasis added.)" 6 Kan. App. 2d at 76 (quoting *Comm'rs of Leavenworth Co. v. Brewer*, 9 Kan. 307, 319 [1872]).

The record before us is void of information concerning the manner in which the hearing before the Board was conducted or the specific rulings which were made during the grievance procedure.

It is the nature of the act performed that determines whether the action is administrative or quasi-judicial, not whether it is a "formal" hearing. See *Speece*, 6 Kan. App. 2d at 73-74.

We conclude that the Board's actions in the present case cannot be construed as quasi-judicial. In rejecting Schmidt's claim for additional compensation, the Board was not acting as an impartial body rendering a quasi-judicial decision between contending parties. Instead, the Board was simply acting as an agent on behalf of its principal, the school district, in disallowing the claim. See *Speece*, 6 Kan. App. 2d at 76; *Concannon v. Board of Linn County Comm'rs*, 6 Kan. App. 2d 20, 22-23, 626 P.2d 798, *rev. denied* 229 Kan. 669 (1981).

We find that Schmidt's filing in the district court was allowable, given the facts and the record before us.

## Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 60-256(c). An appellate court must read the record in the light most favorable to the party opposing the motion, and where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be de-

nied. *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 520, 856 P.2d 1313 (1993).

Resolving this appeal requires an interpretation of the employment contracts entered into between the parties. Because the contracts are written agreements, this court may construe the documents and determine their legal effect. *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 240, 865 P.2d 182 (1993). While reviewing the instruments, this court is not bound by the trial court's interpretation. 254 Kan. at 240.

The fundamental principle in the interpretation of a contract is to determine the intention of the parties and to give effect to that intention if it is consistent with the law. *Garvey Center, Inc. v. Food Specialties, Inc.*, 214 Kan. 224, 229, 519 P.2d 646 (1974). Each annual contract Schmidt executed was based upon a master agreement which had been collectively negotiated between the Onaga Local Educators Association and the Board. The master employment agreements were incorporated into each of Schmidt's annual contracts and concern the same subject matter. Thus, the master agreements and the annual contracts should be construed together to determine the intent of the parties. See *Hollenbeck v. Household Bank*, 250 Kan. 747, 752, 829 P.2d 903 (1992) ("Documents which are executed at different times, but in the course of the same transaction concerning the same subject matter, will be construed together to determine the intent of the parties to the contract.").

We conclude that the trial judge was correct to focus on the wording and meaning in the agreements relating to the term "teachers."

The master agreements were collective bargaining agreements between the Board and the Onaga Local Educators Association. The agreements unambiguously state that a teacher, as used in the agreements, shall be a certified employee of the school district, except administrators and substitute teachers. This language specifies the individuals who have rights and obligations under the agreement. Here, Schmidt was neither a certified teacher nor an employee of the school district when he earned additional college hours after his bachelor's degree.

The agreements reveal an intent by the Board and the Onaga Local Educators Association to reward those certified teachers of the district who obtain further college credit beyond the basic certification requirements. Schmidt could not qualify for advanced salary placement because he was not a "teacher," as that term is used in the agreement, when he earned the extra college hours at issue. Consequently, the district court did not err in granting summary judgment in favor of the Board.

To hold otherwise would reward a person for wandering aimlessly through the academic forest, accumulating many hours, and then taking the required courses to become certified as a teacher. This teacher could then, in theory, attempt to contract with a school district at the top of the pay scale. This cannot be regarded as a reasonable outcome or interpretation of the contract before us. In addition, there may be public policy issues raised by potentially paying a totally inexperienced teacher a much higher starting salary than someone who had much more experience, was tenured, and yet had fewer "hours" of college. To find for Schmidt here would invite a disruption in the budgetary process for school districts and have great potential to damage teacher morale.

Affirmed.