NOT DESIGNATED FOR PUBLICATION

No. 120,122

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DUSTIN DELEHANTY, WILLIAM E. GIES, JR.,
and JUNCTION CITY EDUCATION ASSOCIATION,
*Appellants*,

v.

BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT NO. 475,
GEARY COUNTY, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed January 21, 2020. Affirmed.

*Vincent M. Cox*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, for appellants.

*Mark Edwards*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellee.

*Marjorie A. Blaufuss*, of Kansas National Education Association, of Topeka, amicus curiae.

*Luke A. Sobba* and *Donna L. Whiteman*, of Kansas Association of School Boards, of Topeka, amicus curiae.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: "The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013).

The principal at Junction City High School assigned Dustin Delehanty, William E. Gies, Jr., and other similarly situated teachers to teach a Multi-Tiered System for Support of Reading (MTSSr), a remedial reading program, during some of their seminar periods each week. Delehanty and Gies believed they were entitled to additional compensation under their contracts as a result of the additional assignment, but the school disagreed. Delehanty and Gies initiated a grievance as outlined in their contracts, and ultimately the issue arrived before the local Board of Education (Board). The Board disagreed with Delehanty and Gies and denied their grievance. Delehanty and Gies appealed to the district court and added two new claims to the suit. The Junction City Education Association (JCEA) joined as a party on the two new claims.

The parties filed opposing motions for summary judgment. The district court denied Delehanty and Gies' motion for summary judgment and granted a portion of U.S.D. 475's motion for summary judgment. Delehanty and Gies appeal, arguing the district court erred by denying their motion for summary judgment and granting part of U.S.D. 475's motion. Because we find the contract is unambiguous and does not require additional compensation to teachers who are assigned to teach MTSSr classes during some of their seminar periods, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Delehanty and Gies were teachers employed by U.S.D. 475 at Junction City High School. The JCEA is an exclusive bargaining representative for all professional employees of U.S.D. 475.

2

In July 2016, U.S.D. 475 and JCEA entered into a formal agreement (Agreement) for the 2016-2017 school year. The Agreement defined a "Normal Teaching Load" as:

"six (6) class periods and 2 (two) seminars per 2 (two) day scheduling cycle (in general eight student periods) and duties as assigned by the principal during seminar period. The seminar may be used for individual tutoring, activities, clubs, and/or facilitating lessons provided to all teachers related to a content area and career clusters."

The Agreement also defined "Overload Assignments" as situations when "a teacher accepts an additional daily class period on a regular basis beyond the normal teaching load." When a teacher accepts an overload assignment, the teacher "shall be compensated . . . an additional one-sixth of salary schedule amount."

The Agreement also noted that a "supervisor may require licensed staff to perform additional duties as may be assigned within the duty day." An "Additional Duty" was a "necessary task outside the regular classroom teaching responsibility, such as, but not limited to bus, hall, assemblies, cafeteria, etc."

Under the Agreement, a teacher at Junction City High School was required to teach three 80-minute class periods and one seminar per day and had one 80-minute planning period per day.

During the 2016-2017 school year, the principal at Junction City High School assigned Delehanty, Gies, and other teachers to teach MTSSr class twice a week during their seminar period. According to Delehanty and Gies, MTSSr classes were part of the school's literacy program for "struggling readers, and [were] designed to aid students who score below grade level in reading fluency and comprehension through additional instruction and practice."

3

To teach the MTSSr class, the teachers had to:

"A.  Administer and score orthographic tests;

"B.  Plan with instructional coaches for one-minute games;

"C.  Read and select the appropriate reading material for students;

"D.  Make necessary copies of materials;

"E.  Identify vocabulary words;

"F.  Create orthographic maps;

"G.  Monitor progress of students via spelling tests and MAZE tests;

"H.  Record data on student progress on a spreadsheet for further monitoring by USD 475 personnel; and

"I.  Use plan time to collaborate with instructional coaches."

In September 2016, the teachers attended a training session to facilitate their ability to teach the class. According to Delehanty and Gies, the MTSSr requirements required an additional 40 to 50 minutes of planning per student for each MAZE assessment.

The teachers assigned to teach MTSSr classes had to use their 80-minute planning period to plan for the MTSSr class, in addition to their regular courses. U.S.D. 475 did not pay Delehanty and Gies any additional compensation for teaching the MTSSr class. Believing that they were entitled to additional compensation under the Agreement, Delehanty and Gies began grievance proceedings as the Agreement outlined. The final grievance stage allowed the grievant to appeal to the Board. The Board denied the grievance, saying that "MTSS occurs during seminar period which is considered part of the teacher's normal teaching load, thus it is not considered [an] overload as described in item B1 definition as an overload assignment." In April 2017, Delehanty and Gies informed the clerk of the Board that they intended to appeal the Board's decision.

In May 2017, Delehanty and Gies sued U.S.D. 475 in district court. Delehanty and Gies raised three issues in the suit:  (1) an appeal from the Board's decision denying the

4

grievance; (2) a claim for declaratory judgment that Delehanty and Gies were entitled to additional compensation under the Agreement; and (3) a breach of contract claim asserting U.S.D. 475 breached the Agreement by not compensating Delehanty and Gies for their facilitation of MTSSr classes. Shortly after U.S.D. 475 filed its answer, Delehanty and Gies moved to amend their petition and add JCEA as a plaintiff. U.S.D. 475 opposed the motion to add JCEA as a plaintiff. U.S.D. 475 argued the district court would not have jurisdiction over JCEA because JCEA was not a party in the original grievance proceedings, was not a part of the notice of appeal, and was not a grievant under the Agreement.

In response, Delehanty and Gies argued JCEA could be added as a plaintiff because the lawsuit included claims for declaratory judgment relief and breach of contract—separate from the appeal from the Board's decision on the grievance. Ultimately, the district court allowed the amended petition to be filed and allowed, without objection, JCEA to be included as a plaintiff.

The parties filed competing motions for summary judgment. U.S.D. 475's motion argued: (1) that there was no evidence to show that the Board acted fraudulently, arbitrarily, or capriciously; (2) that the district court lacked jurisdiction to hear the case because Delehanty and Gies did not comply with the grievance procedure; and (3) that Delehanty and Gies did not exhaust their administrative remedies. U.S.D. 475's motion did not raise any substantive issues on Delehanty and Gies' additional claims. Instead, U.S.D. 475 focused on procedural bars to the district court's jurisdiction to hear the claims.

The district court denied the plaintiffs' motion for summary judgment. The district court granted U.S.D. 475's motion for summary judgment in part, finding that the Board "was acting in accordance within the terms of the Agreement and the law." But the district court denied U.S.D. 475's motion as it related to jurisdiction and administrative

5

remedies. U.S.D. 475 does not appeal from the district court's decision. The plaintiffs filed a timely notice of appeal. On appeal, the plaintiffs note they are only appealing the decision on their "breach of contract and declaratory judgment claims."

ANALYSIS

*The district court had jurisdiction to consider Delehanty and Gies' claims for declaratory relief and breach of contract, the only issues raised on appeal.*

The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

Delehanty and Gies brought their original appeal to the district court under K.S.A. 60-2101(d) which states that a "judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising *judicial or quasi-judicial* functions may be reversed, vacated or modified by the district court on appeal." (Emphasis added.)

In an amicus brief, the Kansas National Education Association (KNEA) raises the issue of whether the Board was acting in a quasi-judicial manner when it decided that Delehanty and Gies had no right to additional compensation under the Agreement. If the Board was not exercising quasi-judicial power, its decision would not be reviewable under K.S.A. 60-2101(d), and Delehanty and Gies would need to take some other avenue to contest the Board's decision.

6

Quasi-judicial is defined as

> "'[a] term applied to the action, discretion, etc., of public administrative officers
> or bodies, who are required to investigate facts, or ascertain the existence of facts, hold
> hearings, weigh evidence, and draw conclusions from them, as a basis for their official
> action, and to exercise discretion of a judicial nature.'" *Brown v. U.S.D. No. 333*, 261
> Kan. 134, 149, 928 P.2d 57 (1996) (quoting Black's Law Dictionary 1245 [6th ed. 1990]).

Whether a board is exercising quasi-judicial power depends on the specific facts and nature of the dispute. *Schmidt v. U.S.D. No. 322*, 24 Kan. App. 2d 643, 645, 951 P.2d 960 (1997).

This court has held that when a board of education rejects an employee's claim for additional compensation, the board is not exercising quasi-judicial power. *Schmidt*, 24 Kan. App. 2d at 647; *Speece v. No. U.S.D. 420*, 6 Kan. App. 2d 71, Syl. ¶ 2, 626 P.2d 1202 (1981). *Schmidt* and *Speece* contain similar facts. Both cases involve a teacher requesting additional compensation and the respective board's denial of that compensation. In both cases, this court held that the boards did not exercise quasi-judicial power because the boards were not impartial bodies rendering a quasi-judicial decision. Instead, the boards were acting as interested parties to a contract by refusing to pay compensation to another party who believed he or she was due additional compensation under the same contract. *Schmidt*, 24 Kan. App. 2d at 647; *Speece*, 6 Kan. App. 2d 71, Syl. ¶ 2.

The situation here is the same. Delehanty, Gies, and U.S.D. 475 were engaged in a contract dispute. Delehanty and Gies believed they were entitled to additional compensation, and U.S.D. 475 believed they were not. The Board that ultimately reached a decision over whether Delehanty and Gies were entitled to compensation was the same Board that was party to the Agreement. The Board had a personal interest in the outcome of the dispute. Given this, the Board here is in the same situation as the boards in *Schmidt*

7

and *Speece*—a party to a contract who refuses to pay compensation to another party to the contract who believes he or she was entitled to compensation. As a result, the Board here was not exercising quasi-judicial authority when it decided Delehanty and Gies' grievance. See *Schmidt*, 24 Kan. App. 2d at 647; *Speece*, 6 Kan. App. 2d 71, Syl. ¶ 2.

Because the Board was not exercising quasi-judicial power, the district court lacked jurisdiction, under K.S.A. 60-2101(d), to hear Delehanty and Gies' appeal from the Board's decision. But Delehanty and Gies were not without an avenue for the district court to review the case. Like the teacher in *Schmidt*, Delehanty and Gies could have filed a separate action with the district court, as opposed to an appeal under K.S.A. 60-2101(d). See *Schmidt*, 24 Kan. App. 2d at 647. Delehanty and Gies did so here, all part of the same case.

Delehanty and Gies' petition to the district court included the appeal under K.S.A. 60-2101(d) and also new claims for declaratory judgment and breach of contract. Delehanty and Gies alleged jurisdiction on the additional claims was proper under K.S.A. 60-301 et seq. and K.S.A. 60-1701 et seq. When JCEA was added as a party, it had the ability to pursue those claims on appeal independently from Delehanty and Gies. We find that the district court had jurisdiction over those claims, as do we. As to the K.S.A. 60-2101(d) appeal, no party has appealed that decision so it is not before us.

*The district court did not err in its rulings on the parties' motions for summary judgment.*

The summary judgment standard is well established in Kansas. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018). When, as here, there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). When an appeal involves the interpretation and legal effect of a written instrument, it is a matter of law over which appellate courts exercise unlimited review. *Thoroughbred Assocs. v. Kansas City Royalty*

8

*Co.*, 297 Kan. 1193, 1207, 308 P.3d 1238 (2013); see also *City of Arkansas City v. Bruton*, 284 Kan. 815, 828-29, 166 P.3d 992 (2007) ("Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect."). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Stechschulte*, 297 Kan. at 15.

The two claims on appeal—declaratory judgment and breach of contract—involve essentially the same issue: Based on the Agreement, were Delehanty, Gies, and the other teachers entitled to compensation for teaching MTSSr classes during some of their seminar periods? Both claims require an interpretation of the contract and an application of the facts to determine whether the Board was contractually obligated to provide additional compensation. The parties here do not agree on all the facts involved, but they agree that there are enough uncontroverted material facts to rule as a matter of law on the remaining claims. The parties agree that the principal assigned Delehanty and Gies to teach MTSSr classes during some of their seminar periods. The case turns on this one fact.

Two contract provisions are at issue, the definitions of a normal teaching load and an overload assignment.

"A.   Normal Teaching Load
  1.   The normal teaching load at the high school shall be six (6) class periods and 2 (two) seminars per 2 (two) day scheduling cycle (in general eight student periods) and duties as assigned by the principal during seminar period. The seminar may be used for individual tutoring, activities, clubs, and/or facilitating lessons provided to all teachers related to a content area and career clusters.

  . . . .

9

"B.   <u>Overload Assignments</u>

    1.   When a teacher accepts an additional daily class period on a regular basis beyond the normal teaching load it shall be considered an overload assignment.

    2.   Teachers shall be compensated as follows for an overload assignment.
High School—an additional one-sixth of salary schedule amount
Middle School—an additional one-sixth of salary schedule amount."

The sole issue here is whether the MTSSr assignment qualifies as an "Overload Assignment" under the Agreement. The motions for summary judgment hinge on whether the MTSSr assignment is considered an "additional daily class period" under the contract. If so, Delehanty, Gies, and the other teachers would be entitled to additional compensation under the Agreement.

Delehanty and Gies argued that they had to teach seven, instead of six, classes because they were assigned to teach MTSSr. But whether Delehanty and Gies must teach more is not the real question. The real question is whether the MTSSr assignment was an additional daily class. Delehanty and Gies also argue that as a result of being assigned to teach MTSSr they were required to use their planning time to prepare for the lesson. U.S.D. 475 disagreed with Delehanty and Gies' argument, stating that no planning was needed to teach MTSSr. Under the Agreement, Delehanty and Gies were entitled to "one class period per day for planning." But again, whether Delehanty and Gies were forced to use a portion of their planning period to plan for MTSSr is also immaterial because, even if they do, it does not mean that MTSSr is an "Overload Assignment."

After reviewing the Agreement, we find the contract to be unambiguous. Under the plain language of the contract, teaching MTSSr during two weekly seminar periods was not an "Overload Assignment" as defined by the Agreement. As a result, no additional compensation is required. There are three primary reasons we reach this conclusion.

10

First, the Agreement separated a class period and a seminar period into two distinct groups. MTSSr required some teaching, but it did not require the same amount as a traditional class as evidenced by the fact that it was accomplished in just two seminar periods. Teachers were not required to teach MTSSr daily for an entire class period, so it could not qualify as an "Overload Assignment" as defined by the Agreement. Delehanty and Gies seemed to tacitly acknowledge this because they did not request a full "additional one-sixth" of their salary that accepting an "Overload Assignment" would entitle them to under the Agreement. Instead, Delehanty and Gies only requested 40% of one-sixth of their salary for teaching MTSSr during seminar.

Second, the Agreement allowed the principal to assign duties during the seminar period and then included a permissive, although not exclusive, list of seminar assignments. The parties agreed that all teachers had a seminar assignment every day. These assignments included: "MTSS reading, MTSS math, Student to Student Seminar, Behavior interventions, Team and/or Cluster. There are duties associated with each assignment." The Agreement also specifically allowed individual tutoring which was much like the MTSSr duties, with a limit of 12 students per seminar. The purpose of MTSSr was to improve the reading ability of designated students.

Third, this interpretation is bolstered by a later provision in the Agreement which provided that the "supervisor may require licensed staff to perform additional duties as may be assigned within the duty day." The assignment of MTSSr duties fell within this provision as it is within the duty day.

The district court reached the correct decision when it granted part of U.S.D. 475's motion for summary judgment and denied Delehanty and Gies' motion for summary judgment. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008) (court can affirm the district court even if the district court reached the right conclusion

11

for the wrong reason). Summary judgment is proper in favor of U.S.D. 475 for the breach of contract and declaratory judgment claims.

Affirmed.