**Fred L. BUHLER, Plaintiff and Appellant,**

v.

**Verl STONE et al., Defendants and Respondents.**

**No. 13715.**

Supreme Court of Utah.

March 18, 1975.

---

2. Rule 51, U.R.C.P.; Price v. Sinnott, 85 Nev. 600, 460 P.2d 837 (1969).

Don Robert Petersen, of Howard, Lewis & Petersen, Provo, for plaintiff-appellant.

Arnold Roylance, Utah County Atty., Jeril B. Wilson, Asst. Utah County Atty., Provo, for defendants-respondents.

CROCKETT, Justice:

Plaintiff, Fred Buhler, sought a declaration that Utah County Ordinance 1970–1, quoted below, which deals with the keeping of premises in unclean and unsightly conditions, was unconstitutional and asked that the County be enjoined from enforcing it. His averments are: that it is vague and uncertain; that it is not within the county's police power; and that it does not contain the procedural requirements of due process of law. The district court rejected those contentions and the plaintiff appeals.

Plaintiff is a steel worker and farmer residing at Highland, in Utah County. He owns approximately 40 acres of land; and in the area adjacent to his home has accumulated over 250 old automobiles and other adjunctive materials.

On March 6, 1973, the Utah County Commission sent Mr. Buhler a letter advising him that the old cars and materials on his property constituted a violation of County Ordinance 1970–1 and that he should correct the situation within 30 days. As a consequence thereof a meeting was arranged on April 26, 1973, which the plaintiff, the County Commissioners and the County Attorney attended. Pursuant to the discussion the plaintiff was given until June 25, 1973, to clean up his premises; and this was confirmed in a letter to him May 8, 1973. The Plaintiff having done nothing to improve the situation, on July 6, 1973, another letter was sent informing him that the cars and materials would be removed and the property cleaned up by the County.

Instead of conforming to the County's request, plaintiff brought this action challenging the ordinance. The parts which bear on this controversy are:

Section 3–13–2. Real property to be kept clean. It shall be unlawful for any person . . . owning or occupying any real property in the unincorporated area of Utah County to fail to control the growth of injurious and noxious weeds on such property *or to fail to remove* from such property . . . any such weeds or any refuse *and any unsightly or deleterious objects* or structures *upon notice from Utah* County as provided in this Chapter.

Section 3–13–3. Control of unsightly wastes. It shall be unlawful for any person to cause or permit *junk, scrap metal*, waste paper products, discarded building materials, or any unused abandoned vehicle, vehicles, or abandoned parts, machinery or machinery parts, or other waste materials to be in or upon any yard, lot, or piece of property within the unincorporated area of this County . . . whenever said items shall be unsightly and in public view.

 An initial observation applicable to this problem is that legislative acts are entitled to a presumption of validity; and that the courts should interfere with the

legislative prerogative only with reluctance.[1]

■■ Concerning the charge of vagueness, it should be realized that legislation must necessarily be in somewhat general terms because it is obviously impossible to describe in detail every act and circumstance a statute or ordinance is intended to deal with. It is but sensible and practical that courts should take into consideration the difficulties involved in describing such conditions with the last degree of precision of language.[2] The pertinent parts of the ordinance should not · be viewed in isolation for the purpose of finding fault with them and declaring it unconstitutional; they should be viewed in light of the total context and purpose; and an enactment should not be declared void for vagueness unless it is so deficient that it is susceptible of no reasonable construction which would make it operable. It is our opinion that if the ordinance is read in the light of the foregoing principles it meets the requirements set forth in State v. Packard;[3] that persons of ordinary intelligence, who desire to know the law and abide by it, can tell what their conduct should be.

■ In attacking the ordinance as not within the police power, plaintiff argues that that authority of government does not extend to the regulation of appearance and esthetics. It is true that the police power is generally stated to encompass regulation of matters pertaining to the health, morals, safety or welfare. But those are generic terms. The promotion of the general welfare does not rigidly limit governmental authority to a policy that would "scorn the rose and leave the cabbage triumphant." Surely among the factors which may be considered in the general welfare, is the taking of reasonable measures to minimize discordant, unsightly and offensive surroundings; and to preserve the beauty as well as the usefulness of the environment.[4]

■ Applicable to the issues above discussed, and even more so to the question of notice, is the fact that the plaintiff is not entitled to challenge the ordinance and have it declared void as an abstract proposition, or because it may unjustly affect someone else.[5] He may do so only if his personal interests are adversely affected by the defects he complains of. The matter of notice is covered by Section 3-13-11 of the ordinance:

> . . . where the violation exists, [the County] *shall serve notice in writing* upon the owner or occupant of such property, either personally or by mailing notice, . . . requiring such owner or occupant . . . to eradicate or destroy *or remove*, the weeds, refuse, objects, or structures, causing the violation within such time as the County Board of Health . . . may designate which shall be *no less than ten (10) days after* the date of services of *such notice.*

It is the plaintiff's contention that because the ordinance in itself does not provide for a formal hearing before the County can interfere with his property, that it does not meet the requirements of due process of law.[6] We disagree with that contention. As the facts herein re-

1. See Newcomb v. Ogden City Public School, etc., 121 Utah 503, 243 P.2d 941; Kent Club v. Toronto, 6 Utah 2d 67, 305 P.2d 870.

2. See State v. Cole, 18 Ariz.App. 237, 501 P. 2d 413.

3. 122 Utah 369, 250 P.2d 561.

4. For cases holding such protection of the general welfare is a valid exercise of the police power, see Oregon City v. Hartke, 240 Or. 35, 400 P.2d 255; State v. Diamond Motors, Inc., 50 Haw. 33, 429 P.2d 825; Cromwell v. Ferrier, 19 N.Y.2d 263, 279 N.Y.S.2d 22, 225 N.E.2d 749.

5. Greaves v. State of Utah, Utah, 528 P.2d 805; Walgreen Co. v. State Board of Equalization, 70 Wyo. 193, 246 P.2d 767; 16 Am. Jur.2d, Constitutional Law, Sec. 119.

6. See Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; and Cf. Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

cited show, the compliance with the provisions of the ordinance gave the plaintiff ample notice and a full opportunity for a hearing and determination as to whether the condition of his premises was offensive and in violation of the ordinance. Reasonable notice and opportunity to be heard is what due process of law entitles him to.[7] His contenion that it has been denied him is refuted by the procedure which was available to him and which has been pursued, including the bringing of this action and having a trial and determination made in the district court, and a review by this court.

In accordance with what we have stated herein, we are not persuaded that we should disagree with the holding of the trial court which refused to declare the ordinance in question unconstitutional; and which dissolved the temporary injunction and ordered the plaintiff to comply with the ordinance.

Affirmed. No costs awarded. (All emphasis added.)

HENRIOD, C. J. and TUCKETT, J., concur.

ELLETT, Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice Maughan with the exception that I do not think the Fourteenth Amendment to the Federal Constitution gives any rights to anybody.[1] Our own State Constitution gives all the redress one needs against any lack of Due Process.[2]

The ordinance in question provides:

Section 3–13–2. Real property to be kept clean. It shall be unlawful for any person, corporation, partnership, or legal entity owning or occupying any real property in the unincorporated area of Utah County to fail to control the growth of injurious and noxious weeds on such property or to fail to remove from such property any such weeds or any refuse and *any unsightly* or *deleterious* objects or structures upon notice from Utah County as provided in this chapter. [Emphasis added.]

Unsightliness, like beauty, exists only in the eye of the beholder. A hop toad is not unsightly to another hop toad.

If one must remove unsightly objects should he be permitted to keep a Corvette automobile? How about his mother-in-law? Must she go, too? Of course, my mother-in-law is beautiful (to me), but the agent of the defendant might disagree and think she was unsightly. Who draws the line and where is it to be drawn.

Beauty and unsightliness are each incapable of a definition which would permit them to be categorized. I therefore dissent.

MAUGHAN, Justice (dissenting).

Respectfully, I dissent on the ground that the challenged ordinance neither comports with substantive nor procedural due process. Specifically, this criminal statute forbids an act in terms so vague that there is an absence of ascertainable standards of guilt, and thus encourages arbitrary and erratic enforcement. The effect of the statute is to grant unfettered discretion to the County Board of Health and its employees to determine what objects or structures are "unsightly." Those generally implicated by the imprecise terms of the ordinance may be required to comport themselves according to the lifestyle deemed appropriate by the employees of the County Board of Health.

. . . Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminating enforcement of the law. . . .[1]

---

7. Ibid.

1. See my opinion in Dyett v. Turner, 20 Utah 2d 403, 439 P.2d 266 (1968).

2. Art. I, Sec. 7.

1. Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

Furthermore, the ordinance does not provide an opportunity for a hearing in contravention of minimum standards of procedural due process.

Plaintiff collects old automobiles and has acquired some 261 old vehicles, to which plaintiff assigned a value of $51,815. An automobile dealer, of long standing in Utah County, testifying for plaintiff, placed a value on said automobiles of $28,000. Some of these automobiles appeared to have more value than others, because of their age and type.

These automobiles are stored, in open view, on a 40-acre parcel of land, in proximity to plaintiff's residence.

The subject ordinance, 1970-1, amended Title 3 of the Revised Ordinances of Utah County, Utah, 1956, relating to health and sanitation, by enacting a new chapter 13, entitled "Inspection and Cleaning of Real Property." Pursuant to this ordinance the county, on March 6, 1973, dispatched a letter to plaintiff informing him, "There are numerous cars and other items located on your property that do not conform with the ordinances of Utah County, a copy of said ordinances are enclosed herewith for your reference." The letter went on to say that plaintiff had until April 6, 1973, to correct the situation. After a meeting with the commission on April 26, 1973, the commission dispatched another letter dated May 8, 1973, informing plaintiff he had until June 25, 1973, to comply with the ordinance. A final letter of July 6, 1973, told plaintiff he had until July 11, 1973, to remove any personal articles from any of the vehicles located on his property, because the county was making preparation to "clean up the property, . . ." The delays, as stated by respondent, were given to allow plaintiff to accomplish spring planting and other farming operations,—not to afford him a hearing. Shortly thereafter plaintiff secured a preliminary injunction, which was later dissolved, and plaintiff's complaint dismissed.

This ordinance, Section 3–13–2, deems it unlawful for any person owning or occupying any real property to fail to remove from such property "any unsightly or deleterious objects," upon notice from Utah County. Another section, 3–13–3, deems it unlawful for any person to cause or permit vehicles to be in or upon any piece of property within the county, "whenever said items shall be unsightly and in public view."

This court has long adhered to the precept that if a statute or ordinance be so designed that persons of ordinary intelligence, who would be law abiding, can tell what their conduct must be to conform to its requirements, and it is susceptible of uniform interpretation and application, by those charged with the responsibility of enforcing it, it is invulnerable to an attack for vagueness.[2]

In State v. Packard, 122 Utah 369, 374, 250 P.2d 561, 563 (1952), this court cited with approval the following:

. . . A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. . . .

Does this ordinance by its express terms define a standard whereby a person may determine whether he is violating a criminal law? Where the violation of a law subjects one to criminal punishment, the restrictions upon conduct should be described with sufficient certainty, that persons of ordinary intelligence, desiring to obey the law, may know how to govern themselves in conformity with it, and that no one should be compelled at the peril of life, liberty or property, to speculate as to the meaning of penal statutes.[3] To be valid, when challenged upon the ground

---

2. Kent Club v. Toronto, 6 Utah 2d 67, 305 P.2d 870 (1957); Parker v. Rampton, 28 Utah 2d 36, 497 P.2d 848 (1972).

3. Id., 122 Utah at 375, 250 P.2d at 564.

of vagueness or uncertainty, the statute must be tested accordingly:

> . . . It must be sufficiently definite (a) to inform persons of ordinary intelligence, who would be law abiding, what their conduct must be to conform to its requirements; (b) to advise a defendant accused of violating it just what constitutes the offense with which he is charged, and (c) to be susceptible of uniform interpretation and application by those charged with responsibility of applying and enforcing it.[4]

Plaintiff was given notice to remove certain unsightly objects or items in public view. It should be noted that this ordinance was an amendment to one relating to health and sanitation. Even by construing the term "unsightly" in conjunction with the objectives of the act, health and sanitation, it does not create an objective standard so as to fulfill the aforementioned requirements. "Unsightly" means, according to Webster's New International Dictionary, Second Edition, not sightly, not comely. "Sightly" therein is defined as pleasing to the sight; comely; open to sight; as a sightly hill. "Comely" is said to mean, pleasing to the sight; fair to look upon. Could it be that the subject items being unsightly and therefore not open to sight, are not visible, and thus not in violation of the ordinance?

There is nothing in the language of the ordinance to indicate an intention to limit the term "unsightly" to a meaning less broad than in its ordinary sense. There is no basis to limit the meaning of the word beyond its general meaning so as to define the offense therein denounced. The word provides only a subjective standard at best. The ordinance is therefore void for vagueness and uncertainty under the Fourteenth Amendment.[5]

The ordinance uses the word "abandonment" extensively. From the findings of fact, it is impossible to ascertain whether the court deemed the vehicle abandoned.

Within the findings, the court recited the provision, in the ordinance, that a vehicle shall be prima facie presumed abandoned, if it is not registered and inspected 30 days after the date on which such registration and inspection is required, by the laws of the State of Utah. Our statute, Section 41–1–19, U.C.A.1953, as amended 1973, provides that a motor vehicle, "when driven or moved upon a highway shall be subject to the registration and certificate of title provisions of this act." Section 41–6–158, U.C.A.1953, as amended 1967, provides that every motor vehicle "registered in this state" is required to be inspected.

Since the vehicles in the instant action were located upon private property, and were not being driven or moved on the highway, they were not subject to the registration and inspection laws of this State. The provision of the ordinance concerning the abandonment of the vehicle was inapplicable. Furthermore, the assertion of dominion and control, of plaintiff, over these vehicles would rebut any presumption of abandonment. There is nothing in the record to overcome such rebuttal.

Plaintiff claims the ordinance does not provide a person an opportunity to be heard—and it does not. The determination of the trial court that due process does not require *judicial* process does not meet the problem, nor resolve the issue.

This court, in Christiansen v. Harris, 109 Utah 1, 7, 163 P.2d 314 (1945), in addressing itself to the requirements of due process said:

> . . . Normally we think of "due process of law" as requiring judicial action, but "due process" is not necessarily judicial action. [Cases cited.] In proper cases the purposes of the law, especially as to property, may be effected by executive or administrative action, and still be valid if they meet the requirements of due process. . . . But all these methods and means provided for

---

4. Id., 122 Utah at 376, 250 P.2d at 564.

5. State v. Musser, 118 Utah 537, 223 P.2d 193 (1950).

the protection and enforcement of human rights have the same basic requirements—that no party can be affected by such action, until his legal rights have been the subject of an inquiry by a person or body authorized by law to determine such rights, of which inquiry the party has due notice, and at which he had an opportunity to be heard and to give evidence as to his rights or defenses.

The main opinion says plaintiff attacks the ordinance "as an abstract proposition," and may not do so "because it may unjustly affect someone else." Confronted, as plaintiff was, with the destruction of his property without a hearing is hardly an abstraction. The only procedure available to him was his attack on the ordinance, but he is not required to furnish his own due process—legislation of this nature, to be constitutionally permissible, must provide it for him. The ordinance does provide notice, but that is only half the vehicle. If there were a provision for a hearing the main opinion would have quoted it.

In the City of Everett v. Slade, 83 Wash.2d 80, 515 P.2d 1295 (1973), a proceeding was brought by the City to forfeit the respondent's interest in an automobile which was seized by the police at the time the respondent was arrested and charged with the sale of a controlled substance—an exercise of the police power, and for that reason interesting here. Addressing itself to the City's contention that the "seizure" procedure did not violate Slade's right to due process, because the procedure fell within the "extraordinary situations" exception recognized in various Federal due process cases, the court, in disagreeing, said:

Unlimited power of "seizure" is not authorized by the suggested exception. Even there, due process requires that an individual be given an opportunity for a hearing before he is deprived of any significant property interest except, . . . "for extraordinary situations where some valid governmental interest is at stake that justified postponing the hearing until after the event." Further, the "opportunity" for a hearing must be granted "at a meaningful time and in a meaningful manner." . . . The hearing must be "appropriate to the nature of the case." . . .

Recognizing that "extraordinary situations" may justify the postponement of notice and hearing, the United States Supreme Court recently stated that such situations must be "truly unusual" and that ordinary costs in time, effort, and expense incurred by providing a hearing cannot outweigh the constitutional right. Fuentes v. Shevin, 407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972).[6]

The ordinance before us, although providing for notice, does not provide for any hearing, and therefore, the concept that in an extraordinary situation, notice and an opportunity to be heard may be postponed, is not applicable. The thought that this could be an extraordinary situation, permitting outright seizure, without a prior opportunity to be heard, cannot be countenanced. Indeed, it is refuted by the provision for notice itself.

The subject ordinance is unconstitutional. The judgment of the trial court should be reversed.

6. Id., 515 P.2d at 1297–1298.