No. 83,161

GERALD M. BOYLES, *Appellant*, v. CITY OF TOPEKA, *Appellee*.

(21 P.3d 974)

Opinion filed April 20, 2001.

*James S. Willard,* of Scott, Quinlan & Hecht, of Topeka, argued the cause, and *Deborah L. Hughes,* of the same firm, was with him on the brief for appellant.

*Mary Beth Mudrick,* assistant city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case concerns the constitutionality of a city's public nuisance ordinance prohibiting the maintaining on private property of any garbage, rubbish, trash, refuse, junk, or other listed items which create "an unsightly appearance." The attack on the ordinance is based on a claim of vagueness linked to a claimed violation of defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

The City of Topeka (City) found that the defendant property owner, Gerald M. Boyles, violated the City's public nuisance ordinance, codified as Topeka City Code Section 66-25 *et seq.* Specifically, the City found that Boyles violated Sections 66-27(2) and 66-28 by maintaining a public nuisance. Boyles operates a business

in Topeka that is variously described as a flea market, a second-hand store, and a lawnmower/tiller repair service. On appeal under K.S.A. 60-2101(d), the district court affirmed the City's finding that Boyles maintained a nuisance. Boyles appeals the district court's ruling.

Our jurisdiction is based on an order of transfer from the Court of Appeals. K.S.A. 20-3018(c).

Our review of the record reflects that the district court did not have the benefit of written briefs or any measured discussion by either counsel for the City or for Boyles focusing on the vagueness argument advanced here. However, Boyles' counsel during oral argument below referenced the primary question before us. Counsel said, "Our position is that the word 'unsightly' as used in this ordinance could not be constitutional as applied, Your Honor, because it would not have any sort of objective test whatsoever."

We consider three questions: (1) Is City Code Section 66-27(2) void for vagueness? (2) Did the district court err by not making findings of fact and conclusions of law? and (3) Did the district court err in finding that there was substantial competent evidence that Boyles violated Section 66-27(2)?

Finding no error, we affirm. Section 66-27(2), under the facts here, is constitutional as applied to Boyles.

## FACTS

On September 3, 1998, the City notified Boyles in writing that an inspection of his property showed a violation of Section 66-27(2). The notice informed Boyles that the following specific items found outside on his parking lot constituted a nuisance:

"vehicle seats, plastic floor runners, baby jump seat, baby safety gate, carpet, fold away bed, cabinet doors, mattress, bed frames, bicycle tires, inner tubes, baby car seats, baby high chairs, baby stroller, fan, school desks, tarps, deflated raft, wheel chair, sinks, wicker table, cardboard boxes, stuffed furniture, baby bed frames, section of hand rail, wood tables, wood desks, bumper pool table, vacuum, doors, vanity, counter top, wood bed frames, disassembled metal displays, metal hand rail sections, electric stove tops, formica display cabinets, gas stove, unattached storm windows and doors, disassembled bicycles in pickups, stove, refrigerators, toilet, disassembled and broken lawn mowers, sewing machine, grass bags in pickup, mattresses in pickup, loose trash and debris."

A public hearing was held in the Code Compliance Services Division to decide whether Boyles had violated Section 66-27(2). Boyles attended the hearing and was represented by counsel. A Code Compliance Order was issued with the finding that items on Boyles' property created an unsightly appearance, which constituted a nuisance in violation of Section 66-27(2). Boyles was given 20 days to abate the nuisance. The order further stated: "If not abated, the administrative penalty in the amount of $175.00 will apply in full on October 14, 1998."

Boyles appealed the administrative order to the district court. The district court affirmed.

## DISCUSSION

We first examine whether Section 66-27(2) is void for vagueness and, thus, unconstitutional as applied to Boyles. Section 66-28 provides that "[i]t shall be a violation of city ordinance for any person to maintain or permit a nuisance to exist."

Section 66-27(2) says, in part:

"The maintaining or permitting to be or remain on any . . . private property of any of the following conditions is hereby declared to be and constitute a nuisance. . . .

. . . .

"(2) Garbage, rubbish, trash, refuse, junk and other materials, metals, plumbing fixtures, appliances, auto parts, lumber or other litter and furniture, stuffed furniture, clothing, or other household items which creates an *unsightly* appearance." (Emphasis added.)

In Section 66-25, the City expressed its purpose and intent in adopting Section 66-27(2) and the other provisions of the public nuisance ordinance:

"The Council of the City of Topeka finds that certain conditions as hereinafter defined cause annoyance, inconvenience or damage to the public with respect to the public's comfort, health, safety, welfare and enjoyment of property. . . . [I]t is the purpose and intent of the council of the city to define and proscribe those conditions which are injurious to the public and which constitute a public nuisance."

Boyles asserts that the term "unsightly" is vague and subjective. He argues that ordinary persons could only guess at the meaning

of "unsightly" and that the lack of a common understanding of the term creates the likelihood of arbitrary enforcement.

We are reviewing the constitutionality of an ordinance. Thus, our standard of review is de novo. *City of Wichita v. Edwards,* 23 Kan. App. 2d 962, 964, 939 P.2d 942 (1997). We have a duty to preserve the validity of Section 66-27(2) and to search for ways to uphold its constitutionality. Here, we must: (1) presume that Section 66-27(2) is constitutional, (2) resolve all doubts in favor of validity, (3) uphold Section 66-27(2) if there is any reasonable way to construe the ordinance as constitutional, and (4) before striking the ordinance, we must conclude that it clearly appears to be unconstitutional. *Hearn v. City of Overland Park,* 244 Kan. 638, 640, 772 P.2d 758, *cert. denied* 493 U.S. 976 (1989).

We first examine the tests to be used when considering an ordinance subjected to a void-for-vagueness challenge. In *Hearn,* we discussed the guidelines for evaluating a constitutional challenge based on vagueness. In rejecting an attack on Overland Park's pit bull ordinance, we distinguished the scrutiny afforded ordinances dealing with constitutional guarantees from ordinances, such as Section 66-27(2), which do not deal with constitutionally protected rights, saying:

"It is important to note that we are not dealing with an ordinance that limits constitutionally protected conduct. Because the present ordinance does not infringe upon explicit constitutional guarantees, such as freedom of speech, the ordinance should be upheld unless 'is impermissibly vague in all of its applications.' [Citation omitted.] The plaintiffs must establish that the ordinance is unconstitutional on its face, which means it must be demonstrated to be ' "invalid *in toto*—and therefore incapable of any valid application." ' [Citations omitted.] In order to establish that legislation is unconstitutional on its face, the person challenging the legislation must establish that it is vague ' "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." ' [Citations omitted.]" 244 Kan. at 641.

The test here is whether Section 66-27(2) conveys sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding and practice. In rejecting the contention that the anti-noise ordinance of the City of Rockford was imper-

missibly vague and upholding its validity, the United States Supreme Court said:

"Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' [citation omitted] but we think it is clear what the ordinance as a whole prohibits." *Grayned v. City of Rockford,* 408 U.S. 104, 110, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972.)

With the test inquiries in place, we next turn to consider Boyles' void-for-vagueness argument. Boyles relies primarily on *City of Independence v. Richards,* 666 S.W.2d 1 (Mo. App. 1983). Richards was cited for having an old stove and scattered pots and cans in her yard in an unsightly and annoying manner. She was convicted and fined $250 for violating an ordinance that provided: "It shall be unlawful . . . to permit refuse to accumulate or remain upon such premises to an extent or in such manner as to be *unsightly,* annoying, dangerous or detrimental to the life, health, property or safety of any person in the City." (Emphasis added.) 666 S.W.2d at 4. The *Richards* court noted that the City of Independence had not claimed that the accumulation of items on Richards' property was dangerous or detrimental to life or health. The complaint alleged only that the accumulation of refuse was unsightly and annoying. The ordinance did not define either "unsightly" or "annoying."

*Richards* concluded:

"The term *unsightly,* . . . in the absence of definition, does not suffice as a standard of regulation. It conveys no determinable criterion, but rather invites the vagary of personal response. Nor does the context of the ordinance supply what otherwise lacks. The other operative terms, *accumulation* [also undefined] and *trash* [defined] invest no more certainty to the context than the ordinance conveys without them. It is the *unsightly* accumulation of trash the enactment regulates, and not merely the accumulation of trash. It remains a term without definition—and in the absence of definition or [as in *City of Collinsville v. Seiber,* 82 Ill. App. 3d 719, 38 Ill. Dec. 75, 403 N.E.2d 90 (1980)] the aid of context—is too vague to be enforceable." 666 S.W.2d at 11.

We do not transfer the apprehension expressed by *Richards* to "unsightly appearance" in Section 66-27(2).

Here, Boyles was informed with specificity of the approximately 50 types of items creating the unsightly appearance which he permitted to remain outside on his parking lot.

The enumeration of Section 66-27(2) categories, when linked to the detailed notice Boyles received, focuses on and identifies the conduct deemed by the City as constituting a nuisance. The ordinance reviewed by the *Richards* court contained no temporal safeguard. *Richards* observed that a "momentary blight incidental to the normal enjoyment of the property—does not concern the police power." 666 S.W.2d at 8. The *Richards* court was troubled by this temporal defect. *Richards* opined: "That to avoid vagueness an ordinance which regulates sensory impression needs not only define the proscribed effect with sufficient certainty, but also a duration after which the offensive condition becomes actionable." 666 S.W. 2d at 9.

Although we reject the *Richards* vagueness rationale as controlling here, we agree with the "attractive surroundings" view expressed in the opinion. *Richards* observed that, particularly in urban areas, offensive and unsightly conditions do have an adverse effect on people and "that beauty and attractive surroundings are important factors in the lives of the public. The general welfare is promoted by action to insure the presence of such attractive surroundings." *Richards*, 666 S.W. 2d at 5. Boyles' property is in an urban area.

Boyles also relies on *City of Goodland v. Popejoy*, 98 Kan. 183, 157 Pac. 410 (1916). Popejoy had been found guilty of violating a city ordinance that purported to make it unlawful for any person " 'to deposit, put, throw, place, or allow to remain on any lot or lots owned or occupied by such person . . . any tin cans, manure, ashes, garbage, slops, swill, refuse, filth, offal, unwholesome substance, vegetable matter, or animal matter, or any rubbish whatever.' " 98 Kan. at 184. The *Popejoy* court found that the Goodland ordinance

"is not directed against depositing tin cans, manure, ashes, garbage, and refuse on private property under conditions which render them offensive to others or detrimental to the public health, and is not directed against allowing the enu-

merated articles and substances to remain on private property under conditions which make them offensive or harmful." 98 Kan. at 184-85.

The problem with the Goodland ordinance was that "[t]he offense is complete if any of the things mentioned be deposited or allowed to remain, whatever the quantity, circumstances, or length of time." 98 Kan. at 185. Boyles contends that Section 66-27(2), like the Goodland ordinance, lacks a durational requirement for the alleged condition.

The City counters Boyles' vagueness argument by contending that the word "unsightly" is commonly understood. The City reasons that "unsightly" is a word familiar to Kansas courts by inviting our attention to the following judicial references: *Smith v. Marshall,* 225 Kan. 70, 74-76, 587 P.2d 320 (1978) (finding that plaintiff's injury was not *unsightly* and did not impair the appearance of plaintiff's leg, inquiring into the meaning of the phrase "permanent disfigurement" under the Kansas Automobile Injury Reparations Act); *State v. Weniger,* 9 Kan. App. 2d 705, 710, 687 P.2d 643, *rev. denied* 236 Kan. 877 (1984) (addressing constitutional challenge to an ordinance requiring site screening around junkyards and choosing the word *unsightly* to explain its decision: "Therefore, the word 'decorative' merely limits the word 'fencing' which otherwise might include rows or piles or debris more *unsightly* than the junkyard itself." [Emphasis added.]); *Lambert v. City of Emporia,* 5 Kan. App. 2d 343, Syl. ¶ 1, 616 P.2d 1080 (1980) (using the word *unsightly* in reiterating the rule regarding a party wall and finding that "[t]his rule applies even though removal of the building leaves the party wall exposed to the elements or unsightly").

The City argues that the reasoning found in *Richards* leads to the conclusion that Section 66-27(2) is not vague. The City's position is that its ordinance as a whole is sufficiently definite because it includes in the definition of nuisance "[a]ny condition which provides harborage for rats, mice, snakes and other vermin." Section 66-27(3). However, Boyles was cited only under Section 66-27(2) for creating an unsightly appearance, rather than creating health or safety dangers.

.

The City counters Boyles' temporal concerns advanced in *Popejoy* by pointing to the 10-day abatement period provided by the Topeka nuisance ordinance. Section 66-31(1) requires a violation notice to contain "[a]n order to abate the nuisance within ten calendar days of the date of the violation notice or request a hearing within ten calendar days of the date of the violation notice." The Code Compliance Order dated September 23, 1998, said that Boyles had through October 13, 1998, to abate the nuisance condition. According to the City, if Boyles had junk or refuse on his property for less than 10 days, he could not be punished under the ordinance. The City maintains that Boyles ran afoul of Section 66-27(2) because his practice is to display merchandise in his parking lot until he can sell it, which sometimes takes more than 10 days. The Topeka ordinance abatement period supplies a temporal element to Section 66-27(2) neither referenced in *Richards* nor found in the Goodland ordinance discussed in *Popejoy*.

Other jurisdictions have reviewed and rejected vagueness attacks on the use of "unsightly" in nuisance ordinances. In *Buhler v. Stone*, 533 P.2d 292 (Utah 1975), the Supreme Court of Utah considered a charge of vagueness and uncertainty leveled against a county ordinance. Buhler was a steel worker and farmer. He was advised that old cars and materials on his property constituted a violation of the county ordinance and that he should correct the situation within 30 days. Resolution was not forthcoming. Buhler filed a declaratory judgment action challenging the ordinance. The ordinance in question was termed "Control of unsightly wastes." It was a violation to have on private property:

"junk, scrap metal, waste paper products, discarded building materials, or any unused abandoned vehicle, vehicles, or abandoned parts, machinery or machinery parts, or other waste materials to be in or upon any yard, lot, or piece of property within the unincorporated area of this County . . . whenever said items shall be *unsightly* and in public view." (Emphasis added.) 533 P.2d at 293.

A divided court held, concerning the charge of vagueness, that an ordinance addressing aesthetic conditions must necessarily be "in somewhat general terms because it is obviously impossible to describe in detail every act and circumstance a statute or ordinance is intended to deal with. . . . [P]ersons of ordinary intelligence,

who desire to know the law and abide by it can tell what their conduct should be." 533 P.2d at 294. We agree.

The Court of Appeals of New Mexico also addressed a vagueness challenge to "unsightly" in *New Mexico Mun. L., Inc. v. New Mexico Envir. Imp. Bd.*, 88 N.M. 201, 539 P.2d 221 (Ct. App. 1975). The court reviewed and upheld a regulation relating to storage collection and transportation of solid waste that was attacked because it was so vague that men of common intelligence would necessarily have to guess at its meaning. The regulations in question required that any vehicle employed in the collection or transportation of waste and refuse be "cleaned at such times and in such manner as to prevent offensive odors and *unsightliness*." (Emphasis added.) 88 N.M. at 206. The challengers contended that requiring a vehicle to be cleaned when it was unsightly was constitutionally repugnant for vagueness. The New Mexico Court of Appeals found no vagueness in the word "unsightliness" "when read in conjunction with the stated basic purposes of the regulations." The question to be asked was: "[W]hat might a reasonable person · of average sensibilities consider to be an . . . unsightly condition?" 88 N.M. at 208. The court concluded: "In this case, we hold that the terms complained of are capable of reasonable application and are sufficient to limit and define the duties of the individuals and entities which will be governed by them." 88 N.M. at 209. A similar conclusion applies to Boyles and Section 66-27(2) here.

*City of Collinsville v. Seiber*, 82 Ill. App.3d 719, 403 N.E.2d 90 (1980), also addressed a vagueness challenge to "unsightly." Seiber, the property owner, claimed the nuisance provisions of the Collinsville ordinance were unconstitutionally vague, arguing that the terms "unsightly" and "junk" were not defined. The Collinsville ordinance declared it a nuisance for any person "[t]o permit or maintain an unsightly yard or premises where there is an accumulation or deposit of any vehicle, equipment, junk, wrecked or disabled automobile, trucks, material of any nature, waste or earth." 82 Ill. App. 3d at 721. In holding the ordinance constitutional, the court said:

"It is apparent in the present case that the terms used are significantly explained in the context of the ordinance as a whole. When the entire ordinance in the case at bar is read in a sensible way, it is apparent that the finding of a nuisance is not based solely on the 'unsightly' nature of the premises, nor the 'junk' nature of the objects thereon, but also on the 'accumulation or deposit' of the various objects on open ground, which would constitute clutter, a danger to children, and a possible breeding ground for vermin and rodents." 82 Ill. App. 3d at 725-26.

Seiber operated a sanitation hauling service involving garbage and trash collection. He bought and sold scrap iron metal and silver items. Photographs of the premises were introduced at trial. The photographs showed a variety of items scattered about the premises: motor vehicles, a disabled van, a truck bed, a kitchen sink, barrels, old tires, tree limbs, weeds, twisted metal pieces, scraps of metal and iron, and other debris. The city clerk testified that he visited the property and observed "garbage trucks, parts of garbage trucks, storage of iron, scraps of iron, and general debris" at one location, and "abandoned garbage trucks, high weeds, general disarray and debris at the other." 82 Ill. App. 3d at 722. There was no evidence of either "a danger to children" or "a possible breeding ground for vermin and rodents" in Seiber's trial. However, the court looked to the ordinance as a whole in rejecting the vagueness challenge. The *Richards* court distinguished *City of Collinsville*, noting that the Missouri ordinance prohibited an unsightly premises simply because of its unsightliness. Moreover, unlike the Collinsville ordinance, the "aid of context" was not found in the Missouri ordinance. *Richards*, 666 S.W.2d at 10-11.

We next reference a cluster of cases in which various terms in common usage have withstood constitutional attacks based on vagueness. See *State v. Watson*, 198 Ariz. 48, 53-54, 6 P.3d 752, 757 (Ct. App. 2000) (A Phoenix ordinance directed to curbing "blight," as well as focusing on accumulations of garbage and debris to promote health and safety, withstood a substantive due process challenge. Blight was defined in the ordinance as "unsightly conditions." The court found that "protecting aesthetic values by avoiding visual clutter is a constitutionally sanctioned objective for a municipality" and "that under an objective standard a hypothetical reasonable person would regard the condition as unsightly.");

*Howard v. City of Lincoln*, 243 Neb. 5, 8-9, 497 N.W.2d 53 (1993) (The phrase "weeds or worthless vegetation" carried a common enough meaning and was not unconstitutionally vague, and the ordinance provided definitions that were not confusing to the average citizen.); *People v. Beecher*, 153 Misc. 2d 247, 251, 580 N.Y.S.2d 980 (1992) ("The statutory term 'in good repair' is not incapable of definition and is not a phrase which the common sense of a reasonable person would not comprehend.").

The district court viewed as evidence more than 30 photos of the items that the City claimed collectively created an unsightly appearance. We also have viewed the photos. We cannot say that the district court's characterization was in error. The thrust of Section 66-27(2) prohibited conditions that would deteriorate or debase the appearance and general character of the neighborhood. We do not review Section 66-27(2) in a vacuum. The entire Topeka public nuisance ordinance is to be considered. We believe in the context of the entire ordinance, a reasonable person of average sensibilities could determine what was an unsightly condition under Section 66-27(2). "Unsightly" is defined as "unpleasant or offensive to look at; unattractive." The American Heritage Dictionary of the English Language 1404 (1980). Matthews, Municipal Ordinances suggests that "there is no need to define words (in an ordinance) whose meaning is found in an ordinary dictionary." 1 Matthews, Municipal Ordinances § 3.02 at 41 (2d ed.). Under the facts here, Section 66-27(2) is not so vague as to render it unconstitutionally infirm as applied to Boyles. Boyles' due process rights under the Fifth and Fourteenth Amendments to the United States Constitution have not been violated.

## Findings of Fact and Conclusions of Law

We next consider the form of the district court's opinion. Boyles argues that the district court erred by not making findings of fact and conclusions of law.

The district court's decision was in the form of a letter to the attorneys. It stated in full:

"The Court has reviewed the record and arguments presented in this Petition for Review and finds the decision of the City's Code Compliance Services sup-

ported by *substantial competent evidence*. The ruling of City Code Compliance Services, holding plaintiff in violation of Municipal [Ordinance] 66-27(2) is affirmed. Costs to plaintiff."

In arguing that the district court's decision is inadequate in form, Boyles cites K.S.A. 2000 Supp. 60-252(a) and Supreme Court Rule 165 (2000 Kan. Ct. R. Annot. 200.) K.S.A. 2000 Supp. 60-252(a) provides in part: "In all actions tried upon the facts without a jury or with an advisory jury or upon entering summary judgment or involuntary dismissal, the judge shall find, and either orally or in writing state, the controlling facts and the judge's conclusions of law thereon." Supreme Court Rule 165 reiterates a judge's responsibility: "In all contested matters submitted to a judge without a jury including motions for summary judgment, the judge shall state the controlling facts required by K.S.A. 60-252, and the legal principles controlling the decision."

Boyles points to *In re Lett & Jackson*, 7 Kan. App. 2d 329, 640 P.2d 1294, *rev. denied* 231 Kan. 800 (1982), which stands for the proposition that the appellate court's function where the district court failed to make adequate findings and conclusions is "to review the record to see whether it supports a presumption that the trial court found all the facts necessary to support the judgment. [Citation omitted.]" 7 Kan. App. 2d at 332. A review of the hearing transcript reveals that the constitutionality of Section 66-27(2), the principal issue here, although raised by Boyles, was not considered by the district court. Boyles emphasized the potential for arbitrary and discriminating enforcement. His attorney argued that the evidence introduced by the City at the administrative hearing, depictions of merchandise outside of Boyles' business, ought to be compared with depictions of merchandise outside other businesses. Counsel referenced K-Mart and Sutherland's. Boyles' position in the district court, which he repeated from the administrative hearing, was that: (1) he was cited under the ordinance for displaying merchandise outside, (2) the large retailers were not cited for the same conduct, and (3) the difference was that his merchandise was used. The court said: "If there are five or six businesses violating the ordinance, they have to start with one, don't they?" The district court declared that the only issue was

whether the appearance of Boyles' business constituted a nuisance and rejected evidence of other similar appearing businesses as irrelevant.

Thus, review of the record supports a presumption that the district court found all the facts necessary to support a judgment based on the sole question of whether the appearance of Boyles' business constituted a nuisance.

## Substantial Competent Evidence

We turn to a review of the final issue raised on appeal. Did the district court err in finding that the code compliance order was supported by substantial competent evidence?

This issue represents another attempt by Boyles to fortify his constitutional argument with a challenge to the sufficiency of the evidence or the sufficiency of the various tribunals' opinions of the evidence. Like Issue 2, this issue is neither essential to our consideration of the central issue of constitutionality nor a sound argument. Boyles argues that the evidence was not sufficient to establish that the items on his property had an unsightly appearance. His reasoning, however, is not based on evidence. Instead, he argues that the problem is that "unsightly" is subjective and lacks any common understanding. Thus, he repeats his constitutional challenge to Section 66-27(2).

Affirmed.

ALLEGRUCCI, J., dissenting: The issue is whether Section 66-27(2) of the city's ordinance is void for vagueness. The answer lies in whether the term "an unsightly appearance" is so vague and subjective to render enforcement unconstitutional.

In *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), the United States Supreme Court enumerated reasons for requiring enactments to convey reasonably definite warnings of proscribed conduct:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.

Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.' "

This court has stated that "[a]t its heart the test for vagueness is a commonsense determination of fundamental fairness." *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977). "[I]n determining whether an ordinance is void for vagueness, the following two inquiries are appropriate: '(1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement.' [Citations omitted.]" *City of Wichita v. Wallace*, 246 Kan. 253, 259, 788 P.2d 270 (1990). In my view, Section 66-27(2) does neither.

The ordinance at issue in *City of Rockford* was an anti-noise ordinance prohibiting any person making or assisting in the making of noise adjacent to a school "which disturbs or tends to disturb" the school classes or sessions. The United States Supreme Court found the vagueness question to be a close call. 408 U.S. at 109. The Court stated: "Were we left with just the words of the ordinance, we might be troubled by the imprecision of the phrase 'tends to disturb.' " 408 U.S. at 111. However, because the ordinance specified disturbance of school activity, the Court concluded: "We do not have here a vague, general 'breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school." 408 U.S. at 112. Given that context, the Supreme Court concluded it gave fair notice of what was prohibited. 408 U.S. at 114.

It would serve no useful purpose here to review the cases cited by the majority. In my view, each of the cases can be distinguished from the present case. Some deal with administrative regulations,

others with ordinances that have different wording or additional language from the Topeka ordinance.

Here, Boyles was charged with violating a specific section, Section 66-27(2). He was not charged with violating any other section of the ordinance. The compliance complaint stated that Boyles' violation was for maintaining items on his property which created an unsightly appearance. Maintaining the items is not a nuisance. The nuisance, and violation, occurs only when the items are unsightly.

At the hearing before the district court, the city prosecutor stated:

"I think the issue before the Court would be can this man keep these—this merchandise in his parking lot as opposed to in a building.

"He has been cited for a violation of the City ordinance that says—Well, we have listed a bunch of stuff that's pretty much just used merchandise in the parking lot. And it constitutes a nuisance because it has an unsightly appearance. And I think the issue before the Court is are we correct or are we wrong."

Later, the following colloquy occurred between the court and prosecutor:

"THE COURT: I'm trying to figure out why you think it's a nuisance.

"MS. MUDRICK: The unsightly is part of it.

"THE COURT: Okay, and-

"MS. MUDRICK: We deal with weeds and animals and whatever. This is a provision that deals with unsightly appearance, which is what our city council has decided to include within the ordinance provisions.

"THE COURT: So the problem with it is that it's not pretty.

"MS. MUDRICK: No, it's not. That's exactly right. It's unsightly."

I disagree with the majority that the entire Topeka ordinance is to be considered in determining the vagueness of Section 66-27(2). Further, I am at a loss as to how anyone can determine the meaning of "unsightly appearance" by considering the context of the entire ordinance. There is nothing in the ordinance that gives any clue as to the meaning of "unsightly appearance." "Unsightly" is not defined or limited in any way. The dictionary definition provided by the majority does not limit its general meaning and provides no less subjective standard than the word itself.

I find *City of Independence v. Richards*, 666 S.W.2d 1 (Mo. App. 1983), directly on point and persuasive. The Missouri Court of Appeals reversed Richards' conviction for violating an ordinance with language similar to the ordinance here.

The Missouri Court of Appeals noted that it had not been alleged that Richards' accumulation of items on her property was dangerous or detrimental to life or health. 666 S.W.2d at 7. The complaint alleged only that the accumulation of refuse was unsightly and annoying. There was no ordinance definition for either "unsightly" or "annoying." The Missouri court considered and rejected the proposition that "accumulation," which removes the possibility of prosecution for momentary visual blight, reduced the uncertainty of the ordinance's standard. 666 S.W.2d at 8-9. Among the aesthetic regulation cases reviewed by the Missouri court was *City of Collinsville v. Seiber*, 82 Ill. App. 3d 719, 38 Ill. Dec. 75, 403 N.E.2d 90 (1980), which involved a municipal ordinance making it a misdemeanor for any person to " 'maintain an unsightly yard or premises where there is an *accumulation . . . of . . . junk. . . .*' " *Richards*, 666 S.W.2d at 10. Finding that the purpose of regulating unsightly property necessarily embraced health and safety issues, the Illinois Court of Appeals declined to hold that the ordinance was unconstitutionally vague. *City of Collinsville*, 82 Ill. App. 3d at 725-26.

Unlike the Illinois court, the Missouri Court of Appeals refused to supply "context or ulterior reference to infuse meaning to *unsightly, accumulation,* or other undefined terms" in the Independence ordinance. *Richards*, 666 S.W.2d at 11. In particular, the Missouri court noted that the Independence ordinance provided for citation of a person who permitted refuse to accumulate or remain upon his or her premises to an extent or in such manner as to be dangerous or detrimental to life, health, property or safety of any person but that Richards was cited for permitting refuse to accumulate so that it was simply unsightly. The court stated:

"There is no precondition that the unsightly condition be a source of danger, or a detriment to the life, health, property or safety of any person. The ordinance terms are in the *disjunctive*—and render actionable an *unsightly* premise, for unsightliness—simpliciter. [They render actionable, quite separately, an accu-

mulation of trash detrimental to life, health, or safety.] . . . The prosecutor concedes that the ordinance clause the complaint undertakes to enforce has no motive other than to regulate against *unsightly* use of property—that breach of the public safety was neither charged nor at stake." *Richards*, 666 S.W.2d at 11.

The Missouri court concluded:

"The term *unsightly* . . . in the absence of definition, does not suffice as a standard of regulation. It conveys no determinable criterion, but rather invites the vagary of personal response. Nor does the context of the ordinance supply what otherwise lacks. The other operative terms, *accumulation* . . . and *trash* . . . invest no more certainty to the context than the ordinance conveys without them. It is the *unsightly* accumulation of trash the enactment regulates, and not merely the accumulation of trash. It remains a term without definition—and in the absence of definition or [as in *City of Collinsville* . . . ] the aid of context—is too vague to be enforceable.

"An average person presented with the terms of the ordinance and careful compliance will not understand from the text whether a proposed conduct will incur a penalty. 'Ordinances should not be so worded as to leave their substantive elements to the caprices of either judge or jury.' [Citation omitted.] Such ordinances are void for vagueness and uncertainty. [Citations omitted.]" *Richards*, 666 S.W.2d at 11.

Independence's ordinance, like the Topeka ordinance, contained sections or provisions concerning other nuisances, including conditions detrimental to health and safety. However, Richards, like Boyles, was cited strictly on aesthetic grounds and not on any other grounds. The Missouri court expressly rejected the contention that any other clause or provision would furnish sufficient certainty to the portion of the ordinance under which Richards was charged. See *Richards*, 666 S.W.2d at 11. The same is true as to Boyles. The only dividing line between acceptable items on a person's property and unacceptable items is drawn at items that create "an unsightly appearance." Section 66-27(2). As the Missouri court stated: "[U]nsightly . . . in the absence of definition, does not suffice as a standard of regulation. It conveys no determinable criterion, but rather invites the vagary of personal response." *Richards*, 666 S.W.2d at 11.

In *Kolender v. Lawson*, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983), the Supreme Court struck down as vague a California loitering statue which required a loiterer to provide "cred-

ible and reliable" identification. In so doing, the Supreme Court held: "Although the [void-for-vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, . . . the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' [Citation omitted.]" 461 U.S. at 357-58.

Section 66-27(2) includes no health or safety issues. It is aimed solely at aesthetic regulations and gives no fair warning of proscribed conduct to persons subject to it. Unsightly appearance, like beauty, exists only in the eye of the beholder. The term does not define a standard whereby a person of ordinary intelligence may determine whether he or she is violating the ordinance. The term is incapable of a definition which would provide a meaningful standard to prevent arbitrary enforcement. As in the *Richards* case, it contains no safeguard against arbitrary and discriminatory enforcement. Section 66-27(2) is prone to unjust application, violates commonsense fundamental fairness, and is unconstitutional.

The judgment of the district court should be reversed.

LOCKETT and DAVIS, JJ., join in the foregoing dissenting opinion.