NOT DESIGNATED FOR PUBLICATION

No. 114,000

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEROME L. BRATTON,
*Appellant*,

v.

CITY OF ATCHISON, KANSAS,
CURTIS WHEELER, and
JOHN and JANE DOE, (Unknown City Employees),
*Appellees.*


MEMORANDUM OPINION


Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed June 24, 2016.
Affirmed in part and reversed in part.


*Ronald Schneider*, of Ronald Schneider, Attorney at Law, P.A., of Lawrence, for appellant.


*David R. Cooper* and *Kevin J. Grauberger*, of Fisher, Patterson, Sayler & Smith, L.L.P., of
Topeka, for appellees.


Before MCANANY, P.J., PIERRON and SCHROEDER, JJ.


*Per Curiam*:  Jerome L. Bratton owns a number of properties in Atchison. After
receiving multiple nuisance violations, the City of Atchison (City) issued an
administrative hearing order designating Bratton a habitual violator under its habitual
violator ordinance (ordinance). The City entered three of Bratton's properties a total of
nine times to abate nuisances and tow vehicles belonging to Bratton. Bratton later
brought claims against the City for trespass, conversion, negligence, and violations of his

1

constitutional rights to due process. The district court issued a summary judgment order finding for the City. Bratton appeals, arguing: (1) the ordinance exceeds the authority of state enabling statutes; (2) the ordinance is unconstitutional on its face and as applied to him; (3) the City is liable for violations of his constitutional rights under 42 U.S.C. § 1983 (2006) and for the tortious conduct of its employees; and (4) the administrative hearing order declaring him a habitual violator was not an appealable order.

Bratton is a resident of Atchison. In 2011, he lived in a house at 915 N. 12th Street. Arthur Bratton, Bratton's father, owned the home and paid all the property taxes but did not live there. Bratton did not pay rent but did pay utilities. While Bratton did not own the lot at 915 N. 12th Street, he did own more than two dozen other properties throughout Atchison. Included in these properties were 1010 Walnut Street, which has a building formerly used as a church, and 1017 Walnut Street, which has a house.

The City adopted its Good Neighbor Ordinance in 2007 to address the abatement of nuisances in the city. On March 2, 2010, the City adopted Ordinance No. 6370, the Habitual Violator Ordinance, which amended the Good Neighbor Ordinance. The Habitual Violator Ordinance states:

> "If the owner or legal entity in control of any land has previously received notice to abate a nuisance on any property owned or controlled by that person or legal entity within the City of Atchison in the preceding 12 months, then, the City may determine that the owner of the legal entity is a habitual violator."

The ordinance also provides a penalty for habitual violators, stating: "The City may file an administrative order allowing the City to abate further violations without notice and assess the abatement cost with an Administrative Penalty of $300.00 (per incident) to the owner of the property involved."

Since 1988, the City has issued over 100 nuisance abatement notices to Bratton regarding his properties. Since 1993, the City has also issued over 200 weed abatement notices to Bratton. The City issued at least 14 nuisance abatement notices to Bratton in the 12 months before June 4, 2010.

On June 4, 2010, the City's administrative hearing officer, Fire Chief Michael McDermed, entered an administrative hearing order finding Bratton to be a habitual violator under the ordinance. McDermed had reviewed a file of information about Bratton's case prepared by the code enforcement officer, Curtis Wheeler. Normally, if McDermed needed clarification on something, he would ask Wheeler or drive by the property himself, but he did not specifically recall if he had questions regarding Bratton's case. McDermed assumed Bratton was the owner of 915 N. 12th Street, and the order was restricted to that property. Once he was finished reviewing the file, McDermed signed the administrative hearing order, which the code enforcement secretary had drafted at Wheeler's request.

While the City and Bratton disputed whether and when Bratton received notice of the administrative hearing order, Bratton eventually stipulated he received notice of the hearing order on June 16, 2011. The order stated due to Bratton's designation as a habitual violator, the City could abate any further violations against him without notice. The order also stated: "Sec. 16-44. Appeal to district court. The order of the administrative hearings officer shall be deemed a final order of the city upon entry by the administrative hearing officer and may be appealed pursuant to K.S.A. 60-2101(d)."

On August 1, 2011, the City issued another nuisance abatement notice on the property located at 915 N. 12th Street. The City sent the notice via certified mail to Arthur Bratton and Jerome Bratton. The notice stated the property would be rechecked on or after August 11, 2011, and if the Brattons had not abated the

3

nuisance in that time period, the City might abate it and assess the costs to the owner and the property. On August 19, 2011, McDermed issued another administrative hearing order finding the nuisance on 915 N. 12th Street was still present and authorizing the City to abate it.

On August 31 and September 1, 2011, Wheeler and a City contractor, J.P. Suther, entered the property at 915 N. 12th Street to abate the nuisance. Wheeler and Suther also abated nuisances at 915 N. 12th Street on September 20 and 21, 2011, October 12 and 18, 2011, and December 6, 2011. On September 21, 2011, they also abated a nuisance at 1017 Walnut. On October 24, 2011, Wheeler and Suther abated a nuisance at 1010 Walnut. They towed all vehicles to the City impound lot and took all other items to the dump.

On October 10, 2013, Bratton filed a petition in the district court. The petition brought claims against the City and Wheeler for conversion, trespass, negligence, and violations of Bratton's constitutional rights to due process and equal protection under 42 U.S.C. § 1983.

Both Bratton and the defendants moved for summary judgment. The district court entered separate orders on the motions on December 2, 2014. The court's order denying Bratton's order for summary judgment found (1) the ordinance did not conflict with state law and was not void for exceeding the authority of the enabling statutes, K.S.A. 2015 Supp. 12-1617e and K.S.A. 12-1617g; (2) the ordinance was not unconstitutionally vague; (3) the ordinance did not violate Bratton's substantive due process rights; (4) the ordinance did not violate Bratton's procedural due process rights on its face; and (5) there was a genuine issue of material fact as to whether Bratton received notice of the administrative order designating him a habitual violator, precluding summary judgment on the issue of whether the ordinance violated Bratton's procedural due process rights as applied.

4

The district court's order granting, in part, the City's summary judgment motion found: (1) the applicable statute of limitations barred all claims under §1983 which took place before October 10, 2011; (2) Bratton had failed to provide any evidence to support his equal protection claim, and the City was entitled to judgment as a matter of law; (3) Wheeler was entitled to immunity under the KTCA; (4) Bratton's conversion claim failed because the City was entitled to the defense of privilege; (5) Bratton's trespass claim failed because the City had lawful authority to enter his property under city ordinance; (6) Bratton's negligence claim failed based on the public duty doctrine; (7) Wheeler was entitled to qualified immunity for all §1983 claims; (8) the City was not liable for any federal claims under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 985 S. Ct 2018, 56 L. Ed. 2d 611 (1978), because none of Bratton's constitutional rights had been violated; and (9) payment, waiver and estoppel barred Bratton's claims regarding August 31, September 1, September 20 and September 21, 2011, as well as his claim regarding the removal and towing of a Cadillac.

On April 28, 2015, at a hearing on pretrial motions, Bratton stipulated he received a copy of the June 4, 2010 administrative hearing order in a certified envelope on June 16, 2011. After this stipulation, the City moved for judgment as a matter of law. The court found Bratton had failed to timely appeal the administrative hearing order. Furthermore, the court found Bratton received notice of the order over 3 months before the City took any of the actions at issue in the case, and he had failed to take any action during that time. Based on these findings, the court entered judgment in favor of the City. Bratton appeals.

Bratton argues the City's ordinance exceeds the authority of Kansas' self-help abatement enabling statutes, K.S.A. 2015 Supp. 12-1617e and K.S.A. 12-1617g. According to Bratton, K.S.A. 2015 Supp. 12-1617e requires notice for each and every

5

nuisance abatement, but the ordinance allows the City to abate a nuisance or remove property without any notice at all. The City argues the ordinance is not preempted by K.S.A. 12-1617e, nor does it conflict with K.S.A. 2015 Supp. 12-1617e, thus it is valid.

*Standard of Review*

Where there is no factual dispute, we review an order regarding summary judgment de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). To the extent this issue requires statutory interpretation, we exercise unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

*Enabling Statutes and Preemption*

The City Home Rule Amendment to the Kansas Constitution directly grants cities broad authority to govern local affairs. Kan. Const. Art. 12, § 5; *Claflin v. Walsh*, 212 Kan. 1, 6-7, 509 P.2d 1130 (1973). The home rule powers granted by this amendment allow cities to pass ordinances regarding certain aspects of local governance without the need for statutory authorization. 212 Kan. at 6. Home rule power is not unlimited, however. Among other limitations, cities cannot exercise home rule power in contravention to a state law uniformly applicable to all cities. *Blevins v. Hiebert*, 247 Kan. 1, 5, 795 P.2d 325 (1990).

Enabling statutes can constitute uniformly applicable state laws if they authorize all cities or counties to perform certain acts. 247 Kan. at 11. If enabling statutes are uniformly applicable, they also "preempt the field of their application without the use of preemptive language unless there are express exceptions in the statutes or unless the statutes pertain to police power regulations." 247 Kan. at 11.

6

If an enabling statute contains express exceptions or pertains to police power regulations, a city may also regulate within the subject area as long as the city's ordinance does not conflict with the state law. *Johnson County Water Dist. No. 1 v. City Council of Kansas City*, 255 Kan. 183, 194, 871 P.2d 1256 (1994); *Blevins*, 247 Kan. at 6. To determine whether a city ordinance conflicts with state law, courts look at whether the ordinance authorizes something the statute forbids or forbids something the statute authorizes. If so, then there is conflict. If, however, "'both an ordinance and the statute are prohibitory and the only difference is that the ordinance goes further in its prohibition . . . , there is no conflict.'" *City of Wichita v. Hackett*, 275 Kan. 848, 851, 69 P.3d 621 (2003).

*State Enabling Statutes and the City's Nuisance Ordinance*

The power of cities to use self-help to abate nuisances does not come from their home rule powers, but rather from state enabling statutes. *Barnes v. Board of Cowley County Comm'rs*, 47 Kan. App. 2d 353, 357, 274 P.3d 697 (2012). The statutes in question are K.S.A. 2015 Supp. 12-1617e and K.S.A. 12-1617g. K.S.A. 12-1617e states in relevant part:

> "(a) The governing body of any city may have removed or abated from any lot or parcel of ground within the city any and all nuisances . . . .
>
> "(b) Except as provided by subsection (c), the governing body of the city shall order the owner or agent of the owner of the property to remove and abate from the property the thing or things therein described as a nuisance within a time, not exceeding 10 days, to be specified in the order. The governing body of the city shall grant extensions of such ten-day time period if the owner or agent of the property demonstrates that due diligence is being exercised in abating the nuisance. The order shall state that before the expiration of the waiting period or any extension thereof, the recipient thereof may request a hearing before the governing body or its designated representative. The order shall be served on the owner or agent of such property by certified mail, return receipt requested, or by personal service. . .
>
> . . . .

7

"(d) If the owner or agent fails to comply with the requirement of the order for a period longer than that named in the order, the city shall proceed to have the things described in the order removed and abated from the lot or parcel of ground. If the city abates or removes the nuisance, the city shall give notice to the owner or agent by certified mail, return receipt requested, of the total cost of such abatement or removal incurred by the city. Such notice also shall state that payment of such cost is due and payable within 30 days following receipt of such notice . . . .

"(e) Any city may remove and abate from property other than public property or property open to use by the public a motor vehicle determined to be a nuisance."

K.S.A. 12-1617g states:

"The governing body of any city is hereby granted the power to pass and adopt all ordinances that are necessary to carry into effect the provisions of this act, and to provide penalties for the violation of the provisions of such ordinances not inconsistent with the provisions of this act."

The first step in determining if the City's ordinance exceeds the authority of the enabling statutes is determining whether the statutes preempt the field. K.S.A. 2015 Supp. 12-1617e and K.S.A. 12-1617g are uniformly applicable because they do not contain any provisions which treat certain cities or municipalities differently. The Kansas enabling statutes do not preempt the field, however, because K.S.A. 12-1617g expressly permits cities to pass additional ordinances.

The next question is whether the ordinance conflicts with K.S.A. 2015 Supp. 12-1617e and K.S.A. 12-1617g. Under K.S.A. 2015 Supp. 12-1617e(b), the city is required to provide notice of a nuisance violation by an order served on the owner of any property maintaining or permitting an alleged nuisance. The order must describe the thing or things which constitute the nuisance, provide a waiting period to abate the nuisance of 10 days or less, and inform the owner he or she may request a hearing before the expiration of the waiting period. K.S.A. 2015 Supp. 12-1617e(b). If the owner does not comply

8

within the period of time specified, only then may the city proceed to abate the nuisance. Even then, the city is limited to abating the nuisance described in the order. K.S.A. 12-1617e(d); see also *Board of Butler County Comm'rs v. Alvarez,* No. 111,252, 2014 WL 5313716, at * 4 (Kan. App. 2014 (unpublished opinion) (Standridge, J. dissenting) ("[Pursuant to K.S.A. 2013 Supp. 12-1617e], a city may remove or abate a nuisance and bill the property owner for the cost of doing so if it provides the proper notice and the property owner fails to take the action required to eliminate the nuisance."). Thus, the statute essentially forbids the City's abatement of a nuisance without prior notice of a violation as to that nuisance.

Under the ordinance, a property owner may be designated a habitual violator if he or she has received notice of a nuisance on any properties in the 12 preceding months. One of the resulting penalties for further nuisance violations after being declared a habitual violator is an administrative penalty of $300. K.S.A. 2015 Supp. 12-1617e does not mention habitual violations, but K.S.A. 12-1617g expressly permits cities to adopt any ordinances necessary to carry out the provisions of the statutes. While 2015 Supp. K.S.A. 12-1617e specifically permits recovery of abatement costs, the statute does not mention administrative penalties, but K.S.A. 12-1617g also permits cities to adopt any penalties for violations which are not inconsistent with the statutes. Since both the state enabling statutes and the City's ordinance are generally prohibitory and the designation of habitual violator and the application of administrative penalties merely goes further in this prohibition, this aspect of the ordinance most likely does not conflict with the enabling legislation.

In addition to being able to designate property owners as habitual violators and assess administrative penalties, the City may also go on to the property of a habitual violator and abate a nuisance without notice. As noted above, however, K.S.A. 2015 Supp. 12-1617e specifically requires notice to owners of items which constitute a nuisance and limits a city's abatement to those items to which a property owner has

9

received notice. It also requires the city to give owners a chance to remove the nuisance within a specified period of time or request a hearing. In contrast, the ordinance permits self-help abatement for any items on any of an owner's properties without any notice once the city has designated that owner a habitual violator. Because there is no notice of a violation, the owner does not have an opportunity to abate the nuisance or request a hearing prior to the City's action. Because this aspect of the ordinance permits something which the state law forbids, the city ordinance is in conflict with K.S.A. 2015 Supp. 12-1617e and K.S.A. 12-1617g.

While neither Bratton nor the City raised this argument, the use of the word "shall" in K.S.A. 2015 Supp. 12-1617e could be directory rather than mandatory. In determining whether a statute is directory or mandatory, this court considers: (1) legislative context and intent; (2) substantive effect on a party's rights versus merely form or procedural effect; (3) existence or nonexistence of consequences for noncompliance; and (4) the subject matter of the statutory provision. *State v. McDaniel*, 292 Kan. 443, 446-47, 254 P.3d 534 (2011).

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing provisions into workable harmony if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013). In addition to the enabling statutes K.S.A. 2015 Supp. 12-1617e and K.S.A. 12-1617g, K.S.A. 12-1617f authorizes cities to remove or destroy weeds within city limits. As with K.S.A. 2015 Supp. 12-1617e, K.S.A. 12-1617f also requires notice to owners prior to removal of weeds. Cities may also, however, provide "a minimum one-time yearly notification" in lieu of a notification for each separate instance under K.S.A. 12-1617f(b), and it also explicitly states that notice is "required." If notice is required by statute to remove weeds, and notice must be given at least once a year, the most reasonable reading of K.S.A. 2015

10

Supp. 12-1617e is that at least the same level of notice is also required to abate nuisances or remove vehicles, which can involve more valuable property than weeds.

Furthermore, these statutes implicate an owner's property rights and authorize cities to encroach on those rights. K.S.A. 2015 Supp. 12-1617e essentially establishes due process (notice and an opportunity to be heard) before an owner's property can be removed or destroyed, suggesting the statutes are more than just procedural form. For these reasons, the statute's use of the word "shall" is likely mandatory, and cities are required to give notice before abating a nuisance.

Bratton argues the ordinance is unconstitutional on its face. He contends it violates substantive due process because the requirements for the City to designate someone a habitual violator are arbitrary and unreasonable. He also argues the ordinance is void for vagueness.

The City responds the ordinance is not unconstitutional on its face for violating due process of law. The City argues Bratton does not address the applicable standards for substantive due process claims, so he has not meet his burden of proving the ordinance unconstitutional. The City further contends it is not unconstitutionally vague because it clearly defines a habitual violator and provides standards for those who enforce the law.

*Standard of Review*

A statute's constitutionality is a question of law subject to unlimited review. The appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the legislature's apparent intent. *In re Property Valuation Appeals of Various Applicants*, 298 Kan. 439, 447, 313 P.3d 789 (2013). The party challenging the constitutionality of a statute bears the burden

11

of proving its unconstitutionality. *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 544, 316 P.3d 707 (2013).

*Substantive Due Process*

Traditionally, substantive due process protects a narrow range of fundamental liberty interests from government infringement. *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, 244, 305 P.3d 729 (2013). These interests include "the right to bear and raise children, the right to marry, and various other rights closely allied with those explicitly guaranteed in the Bill of Rights." 49 Kan. App. 2d at 244. Additionally, arbitrary or egregious government action may also violate substantive due process "if [it] further[s] no legitimate governmental interests or [its] character 'shocks the conscience.'" 49 Kan. App. 2d at 244.

In his substantive due process claim, Bratton does not identify any fundamental liberty interest which the City may have encroached upon. Instead, he relies solely on what he claims is the arbitrary definition of habitual violator in the ordinance. He argues the requirement of a single prior notice of a nuisance violation is unreasonable, particularly if that single prior incident was minor, the owner challenged the violation in a hearing, or the owner abated the nuisance himself or herself. As Bratton himself notes, however, the City has broad discretion under the police power to determine what may negatively affect public health, morals, or welfare. See *State ex rel. Stephan v. Lane*, 228 Kan. 379, 392, 614 P.2d 987 (1980). At best, the unreasonableness of the ordinance's requirements are debatable, and "[d]ebatable questions as to reasonableness are not for the courts but for the legislature." 228 Kan. at 392. Bratton certainly does not argue that the mandates of the ordinance shock the conscience as is generally required under a substantive due process analysis. Furthermore, anyone who receives a habitual violator designation may appeal it and challenge it for the reasons Bratton states above. Bratton's

12

challenge is not sufficient to overcome the presumption that the statute is constitutional; thus, his substantive due process argument fails.

*Void-for-Vagueness*

Bratton's primary argument in his facial challenge to the ordinance is it is unconstitutionally vague. In determining whether an ordinance is unconstitutionally vague, we subject it to a two-pronged inquiry. *City of Lincoln Center*, 298 Kan. at 545. First, this court must determine whether the ordinance conveys a sufficiently definite warning and fair notice of the prohibited conduct in light of common understanding and practice. 298 Kan. at 545. Second, we must determine whether the ordinance's terms are precise enough to guard against arbitrary and discriminatory enforcement. 298 Kan. at 545. In analyzing the second prong, the standards of certainty for offenses relying on civil sanctions for enforcement are lower than those for criminal offenses. 298 Kan. at 545. A law is invalid if it fails either prong. 298 Kan. at 545.

Bratton's entire argument regarding the first prong of the vagueness inquiry is limited to one sentence: "The vague, arbitrary, and overly broad definition of a 'habitual violator' is self evident." He does not provide any further explanation or analysis. Despite his assertion, the definition of habitual violator is quite clear. According to the ordinance, the City may designate as a habitual violator any "owner or legal entity in control of any land [who] has previously received notice to abate a nuisance on any property owned or controlled by that person or legal entity within the City of Atchison in the preceding 12 months." Furthermore, the ordinance is also clear about the actions the City may take once it has designated someone a habitual violator—abate nuisances without notice and assess administrative penalties. Thus, the ordinance provides fair notice of both the prohibited conduct and the possible penalties.

13

While Bratton claims the habitual violator designation is also "overly broad," this is the only time he mentions any possible challenge based on the ordinance being overbroad. Because Bratton did not brief this issue, we deem it waived and abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Bratton's argument regarding the second prong of the vagueness inquiry is that the ordinance lends itself to arbitrary, subjective, and discriminatory enforcement based on how the ordinance was enforced in his case. In support of this argument, Bratton points out that Wheeler testified he had discretion to enforce the ordinance. The second prong of this analysis, though, does not require that the ordinance denies any discretion in enforcement. Rather, the ordinance must establish minimal guidelines governing enforcement and provide explicit standards to prevent application on a subjective basis. *City of Lincoln Center*, 298 Kan. at 545 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 [1983]); *Hackett*, 275 Kan. at 854. In this case, while Wheeler has some discretion in whether to designate someone as a habitual violator, he may only do so if that person fits the definition of a habitual violator. Whether he can or cannot designate someone as such is not left up to his subjective interpretation of the term. Thus, the ordinance provides minimal guidelines for enforcement and prevents subjective application.

Next, Bratton argues the ordinance fails the second prong because McDermed believed the habitual violator designation only applied to the property which was covered by the preceding notice. McDermed's personal misunderstanding of the law or the scope of the designation does not establish that the ordinance itself is vague on its face. A plain reading of the statute demonstrates if an owner of *any* property has received a notice in the preceding 12 months for *any* property he or she owned, the City may designate the owner as a habitual violator. Bratton's argument may demonstrate a need for the City's officers to more carefully review the ordinance, but it does not demonstrate the ordinance itself failed to establish guidelines or standards for enforcement.

14

Finally, Bratton argues the ordinance is vague because it does not provide a time limitation for the habitual violator designation. In support of his argument, Bratton cites *Boyles v. City of Topeka*, 271 Kan. 69, 21 P.3d 974 (2001). In *Boyles*, the court considered a void-for-vagueness challenge to a city nuisance ordinance. In its analysis, the court discussed a Missouri case which found a nuisance ordinance vague based partly on its lack of "'a duration after which the offensive condition becomes actionable.'" 271 Kan. at 74 (quoting *City of Independence v. Richards*, 666 S.W.2d 1, 8 [Mo. App. 1983]). The *Boyles* court also discussed another Kansas case which found a nuisance ordinance to be vague for lack of a durational requirement. 271 Kan. at 74-75 (quoting *City of Goodland v. Popejoy*, 98 Kan. 183, 184-85,157 P. 410 [1916]). The *Boyles* court did not focus primarily on the temporal limits of the ordinance at issue, but the opinion suggests such limits are relevant in determining if an ordinance is vague.

While temporal limits may be generally relevant to the clarity of a nuisance ordinance, the rule in these cases is not directly applicable to Bratton's case. In *Richards* and *Popejoy*, the lack of a durational requirement was an issue because the nuisance ordinances failed to specify the time at which a City may take action against a property owner maintaining or permitting a nuisance on his or her property. Under those ordinances, the offense was complete if a nuisance was allowed to exist for any length of time. See *Popejoy*, 98 Kan. at 185. In contrast, Bratton's argument is the ordinance does not contain a time limit on the habitual violator designation. This, however, does not prevent property owners in Atchison from receiving fair notice of prohibited conduct. Perhaps it could lend the ordinance to subjective enforcement if officers were allowed to personally decide when to lift the designation. We must, however, presume the ordinance is constitutional and resolve all doubts in favor of the ordinance's validity.

Additionally, the standard of clarity for ordinances regarding civil sanctions is lower than that for those providing criminal ones. Thus, even with the ambiguity of the

15

length of a habitual violator designation, the statute still provides minimal guidelines for enforcement and is not unconstitutionally vague. Thus, the district court's decision on this issue is affirmed.

In his facial challenge to the ordinance, Bratton includes one sentence on procedural due process. He does not expand on this argument or provide any support. Because Bratton has failed to adequately brief this issue, we deem it waived and abandoned. *Superior Boiler Works*, 292 Kan. at 889.

Bratton also contends the City violated his rights to procedural due process when it designated him a habitual violator and when it entered his land to abate nuisances on the nine occasions. He argues he was not given notice or a chance to be heard either before or after the City issued the order or when the City abated nuisances on his property. The City argues that while Bratton did not receive notice or an opportunity to be heard before the City designated him as a habitual violator, he did have a chance to be heard afterwards. It argues this opportunity provided sufficient due process for both his designation as a habitual violator and the City's nuisance abatements.

*Standard of Review*

Where there is no factual dispute, we review an order regarding summary judgment de novo. *Martin*, 297 Kan. at 246. The question of what process is due in a given case is a question of law over which an appellate court has unlimited review. *Pishny v. Board of County of Johnson County Comm'rs*, 47 Kan. App. 2d 1040, 1063, 277 P.3d 1170 (2012).

16

*Procedural Due Process*

Procedural due process requires, at its base, notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1275, 136 P.3d 457 (2006). When this court reviews a procedural due process claim, it must first determine whether the claim involves a protected liberty or property interest. *State v. Wilkinson*, 269 Kan. 603, 608-09, 9 P.3d 1 (2000). If so, this court must then determine the type and degree of process which must accompany the State's deprivation of that interest. 269 Kan. at 609. Courts use a balancing test to determine the level of procedural protection necessary, weighing

"(1) the individual interest at stake, (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that the additional or substitute procedures would entail." 269 Kan. at 609.

While due process ordinarily requires an opportunity for a hearing before the initial deprivation of a property interest, a predeprivation hearing is not always required. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978); *Baughman v. U.S.D. No. 500*, 27 Kan. App. 2d 888, 893, 10 P.3d 21 (2000). The government may act without "advance procedural safeguards" in cases "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination." *Memphis Light*, 436 U.S. at 19.

Bratton argues the City violated his procedural due process rights both when it designated him a habitual violator and on the nine separate occasions the City entered his property to abate a nuisance. Because the combination of the habitual violator designation and the abatements led to a loss of personal property for Bratton, Bratton's

17

claim implicates property rights. Because of possible differences in the interests involved and process due, however, we will analyze the designation and the abatements separately.

The procedural due process Bratton received regarding his habitual violator designation arguably meets constitutional standards. While the designation opened him up to more severe penalties, the designation itself did not lead to any immediate harm or property loss, so he had a much lower personal interest at stake. The City admits Bratton was not granted notice or an opportunity to be heard prior to being designated a habitual violator. Furthermore, Kansas courts have recognized due process requires quasi-judicial administrative hearings to be fair, open, and impartial. *Adams v. Marshall*, 212 Kan. 595, 601-02, 512 P.2d 365 (1973). In this case, Bratton was not afforded proper due process before being designated a habitual violator. After the designation, however, Bratton had 30 days to appeal. While Bratton adamantly argues he did not receive notice of the designation for over a year, he arguably still had access to an appeal after receiving notice. Bratton, however, did not take any action to appeal the designation.

In this case, a chance for a predeprivation hearing would have reduced the chances of an erroneous designation. Additionally, the burden on the City would be minimal since the City provides notice and opportunity for a hearing for regular nuisance violations which are presumably much more numerous. Given that Bratton's interest at stake was fairly low and that the City did not take any actions under the habitual violator penalties during the time which Bratton had to appeal the designation, the City did not violate his procedural due process rights in issuing the administrative order designating Bratton a habitual violator.

The procedural due process afforded Bratton regarding the nine abatements is more questionable. Bratton had a much higher interest at stake because the City came onto his property and destroyed or removed items he owned. Because the City sent out another nuisance abatement notice in August regarding Bratton's property at 915 N. 12th

18

Street, Bratton had notice and an opportunity to be heard before the City abated nuisances on his property on August 31 and September 1, 2011. See *Hill v. City of Topeka*, No. 98,402, 2008 WL 3005197, at *4 (Kan. App. 2008) (unpublished opinion) (finding notice, 10-day waiting period, and opportunity to request hearing sufficient due process before abatement of nuisance).

In the case of the other abatements, Bratton received no notice or a chance to be heard prior to the City showing up to remove and destroy his property. The administrative order designating Bratton as a habitual violator listed the address 915 N. 12th St. Perhaps he arguably had notice as to all abatements at this property, but he never received notice regarding the two properties on Walnut Street.

There was no postdeprivation procedure Bratton could have used to challenge the City's determination that a nuisance existed or the City's abatement of that nuisance. Requiring notice and an opportunity to be heard prior to the City's abatement would have significantly reduced the risk of erroneous removal or destruction of Bratton's private property. Furthermore, such notice is required by the Kansas enabling statute, K.S.A. 2015 Supp. 12-1617e. Since the City regularly notifies property owners of nuisance violations, the increased burden on the City would likely be marginal. Given the interest at stake, the lack of any predeprivation or postdeprivation notice or hearing, and the small cost of additional procedures, the City did not provide procedural due process when it entered Bratton's land and removed his property in September, October, and December 2011. Because of the failure to provide due process on these instances, the district court's decision regarding Bratton's due process claims is reversed.

The City argues the effect of Bratton not receiving notice and a chance to be heard prior to the City designating him a habitual violator was minimal because it did not result in "an irrevocable loss of a substantial property right or inflict an immediate material harm." The City then argues because Bratton received notice of his habitual violator

19

designation and an opportunity to challenge that designation before being deprived of any property, he received proper due process before the City engaged in abatement actions. The procedural due process argument, however, does not ask solely if someone received notice and an opportunity to be heard; it asks whether the nature and extent of the process received was sufficient given the interest at stake.

While the designation did not lead to irrevocable loss of property, the City's abatement actions did. The adequate due process for the designation, then, is likely not sufficient for the City's abatement actions. Furthermore, while Bratton received an opportunity to challenge his habitual violator designation, he was never given notice he had committed further nuisance violations or given an opportunity to challenge the City's determination.

Also of note, the City cites many cases establishing that procedural due process analysis requires courts to look at both predeprivation and postdeprivation procedures. The City specifically points out some of these cases found postdeprivation procedures alone were sufficient to satisfy due process. In many of these cases, though, predeprivation procedures were either impractical or impossible. See, *e.g., Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 494 (1985) (finding government interest in quickly removing unsatisfactory employee overrode due process need for pretermination hearing); *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (finding requirement of predeprivation hearing impractical when guard intentional destroyed an inmate's property). In Bratton's situation, however, the City appears to have been able to reasonably accommodate notice and an opportunity to be heard prior to designating Bratton as a habitual violator. Thus, these cases do not necessarily support a finding that Bratton's opportunity to appeal was adequate due process.

Bratton also argues the City violated his constitutional rights to due process, protection from unreasonable searches and seizures, and right to privacy. As such, the City supposedly is liable under 42 U.S.C. § 1983 for these violations. The City argues Bratton's due process rights were not violated, so the City cannot be held liable under 42 U.S.C. § 1983. Additionally, the City contends Bratton did not raise the issue of the violation of his right to protection from unreasonable searches and seizures and right to privacy at the district court level, so these arguments cannot be raised for the first time on appeal.

Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). While there are some exceptions to this rule, Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). Bratton did not raise his argument that the City violated his right to protection from unreasonable searches and seizures or right to privacy at the district court level. He does not explain why these arguments should be considered for the first time on appeal. Furthermore, in his reply brief, he does not respond to the City's argument that these issues are not properly before the court. Thus, we will not consider whether the City may be held liable for violation of these constitutional rights under §1983.

Where there is no factual dispute, we review an order regarding summary judgment de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

A city or municipality can be sued directly under §1983 for an unconstitutional action which executes or implements an ordinance or regulation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). On

appeal, the City only argues it did not commit any unconstitutional acts, so it cannot be held liable under §1983. Because the issue was not briefed, the City has abandoned any argument that it should not be held liable even if unconstitutional acts were committed. Thus, if we find Bratton's constitutional rights were violated by the enforcement of the ordinance, the City might be held liable under Bratton's §1983 claims.

*Statute of limitations*

Bratton admits, and the district court found, the statute of limitations for a §1983 claim had already run for all incidents before October 12, 2011. Thus, if the City is liable for violations of Bratton's constitutional rights, it may only be liable for the incidents on October 12, 18, and 24, 2011, and December 6, 2011.

Bratton also argues that under the Kansas Tort Claims Act (KTCA), the City is liable for the tortious conduct of Wheeler. Bratton contends because the ordinance was illegal and unconstitutional, Wheeler did not have authority to enter his land and abate nuisances. Thus, Bratton argues the City and Wheeler are liable for trespass, conversion, and negligence.

The City argues the district court correctly found the City was not liable for any torts. Furthermore, the City also qualifies for the enforcement of law exception to liability under the KTCA. Under either reasoning, the City is not liable for any torts.

*Standard of review*

Where there is no factual dispute, we review an order regarding summary judgment de novo. *Martin*, 297 Kan. at 246. To the extent this issue requires statutory interpretation, we exercise unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

22

*Kansas Tort Claims Act*

The KTCA allows individuals to bring claims against governmental entities for the negligent or wrongful acts of their employees. K.S.A. 2015 Supp. 75-6103(a). Under the KTCA, government liability is the rule and immunity is the exception. *Soto v. City of Bonner Springs*, 291 Kan. 73, 78, 238 P.3d 278 (2010). The act does, however, provide a number of explicit exceptions to liability. See K.S.A. 2015 Supp. 75-6104. Among these is an exception for governmental entities and employees engaged in the "enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution." K.S.A. 2015 Supp. 75-6104(c). This exception is inapplicable when the employee was acting outside the purview of the ordinance which allegedly granted the authority for his or her actions. *Lantz v. City of Lawrence*, 232 Kan. 492, 497, 657 P.2d 539 (1983).

Bratton argues the City and Wheeler are liable for trespass, conversion, and negligence because Wheeler acted pursuant to a void ordinance. According to Bratton, the ordinance is void, so the City did not have authority to enter his land and remove his property. In support of his argument, Bratton cites to *Speer v. City of Dodge City*, 6 Kan. App. 798, 636 P.2d 178 (1981). In *Speer*, the court affirmed the district court's finding that the defendant city was liable for conversion after condemning the plaintiff's personal property and proceeding to remove it from his land and destroy it. In determining the defendant city was liable, the court noted "the City acknowledges that it proceeded under an inappropriate ordinance in attempting to clean up the . . . property, thus its actions may not be justified as a lawful exercise of police power." 6 Kan. App. 2d at 800. This opinion is not persuasive as applied to the present case. For one, the facts are somewhat sparse, thus, the exact meaning of "inappropriate ordinance" is not clear. More importantly, the events in question occurred in 1978 before the passage of the KTCA. L. 1979, ch. 186,

23

Sec. 1. The law in this case is unlikely to be controlling given the legislature later adopted a statute which appears to explicitly abrogate it.

The City argues it cannot be held liable because it qualifies for the enforcement of law exception to the KTCA. As the City points out, all of the tort claims are based on the enforcement of the ordinance and are subject to this exception regardless of whether the law was valid. The only way to impose liability would be if the City had acted outside the scope of the ordinance, but Bratton's claims only relate to the City entering his property and removing items, which is authorized by the statute. Thus, the exception applies to Wheeler's actions, and we affirm the district court's decision.

At the district court level, the City also argued a number of the exceptions under the KTCA applied to this case. While the City focused on the discretionary function exception, it did raise the enforcement of law exception. Because Bratton did not challenge the City's argument that several immunities applied in the present case, the court found for the City regarding all the exceptions, including the law enforcement exception.

*Defenses at Common Law*

Even if the City did not qualify for immunity under the KTCA, the City has a number of defenses barring liability for Bratton's tort claims. Bratton's claim of conversion fails because public officers are privileged to commit acts which would otherwise be conversion if the act constituted abatement of a nuisance. Restatement (Second) of Torts § 265, comment b (1965). Bratton's trespass claim fails because the City was acting under the authority of an ordinance in entering his property, and public officials are privileged to enter land to abate nuisances. Restatement (Second) of Torts § 202 (1965). Bratton's negligence claim also fails because under the public duty doctrine, a government agency may only be liable to an individual for negligence if a special duty

24

existed between that individual and the agency. *Potts v. Board of Leavenworth County Comm'rs*, 39 Kan. App. 2d 71, 81, 176 P.3d 988 (2008). Bratton does not allege the existence of a special relationship.

Bratton does not respond to the City's argument that it qualifies for an exception to immunity under the KTCA. He also fails to respond to the district court's findings that the City has defenses to trespass, conversion, and negligence barring liability. Because the both the KTCA and defenses at common law establish the City is not liable for any torts, the district court's decision is affirmed.

Finally, Bratton argues the notice of the administrative hearing order designating him a habitual violator could not have satisfied procedural due process because it was not an appealable order. He argues the City never held a legitimate hearing, thus, the order was not the result of a quasi-judicial action. Because only judgments from administrative agencies exercising judicial or quasi-judicial functions are appealable, there was no postdeprivation hearing available to Bratton. The City responds that the administrative hearing order was the result of a quasi-judicial action, thus it is appealable.

*Standard of Review*

Where there is no factual dispute, we review an order regarding summary judgment de novo. *Martin v*, 297 Kan. at 246. To the extent this issue requires statutory interpretation, this court exercises unlimited review. *Neighbor*, 301 Kan. at 918.

*Quasi-judicial Proceedings*

Under K.S.A. 60-2101(d), the judgment or final order of a political subdivision acting in a judicial or quasi-judicial capacity is appealable to the district court. An administrative body or officer acts in a quasi-judicial capacity if it is "empowered to

25

investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of a judicial nature." *Mobil Exploration & Producing U.S. Inc. v. Kansas Corporation Comm'n*, 258 Kan. 796, 821, 908 P.2d 1276 (1995). Here, McDermed examined the file of information Wheeler prepared for him on Bratton's case. Based on this evidence, McDermed then made the decision to designate Bratton a habitual violator and issue the order. Since McDermed's position as an administrative hearing officer required him to investigate facts, weigh evidence, and draw conclusions about Bratton's case, he was acting in a quasi-judicial capacity. See also *Kirtdoll v. City of Topeka*, No. 95,946, 2007 WL 570293, at * 1 (Kan. App. 2007) (unpublished opinion) ("[B]y concluding [the property owner] was in violation of City ordinances and ordering abatement, the administrative hearing officer exercised a quasi-judicial function.").

Bratton argues the process the City used to determine he was a habitual violator was not a quasi-judicial procedure and the order was merely an administrative determination. In support of his argument, Bratton cites to *Schmidt v. U.S.D. No. 322*, 24 Kan. App. 2d 643, 646, 951 P.2d 960 (1997). In *Schmidt*, a teacher initiated grievance procedures claiming he was owed a raise under his contract. The school board rejected his claim, and the teacher filed suit 126 days later. The school board claimed its decision not to grant the teacher's claim was quasi-judicial and the teacher had to have filed an appeal within 30 days to challenge the decision. The *Schmidt* court noted "the presence of a formal hearing does not guarantee that the resulting decision is quasi-judicial, but the absence of a hearing strongly suggests that a quasi-judicial decision was not reached." 24 Kan. App. 2d at 646. The court went on to find, however, that ultimately the nature of an action determined whether it was administrative or quasi-judicial, not whether it was a formal hearing. 24 Kan. App. 2d at 647. Since the school board was essentially acting on behalf of the county and not as an impartial judge deciding between two contending parties, the *Schmidt* court held the board's actions were not quasi-judicial. 24 Kan. App. 2d at 647.

26

Bratton relies on the *Schmidt* court's assertion that the absence of a formal hearing suggests a quasi-judicial procedure was not used. As the *Schmidt* court went on to note, however, this is not the only factor to consider. In this case, the hearing to find Bratton a habitual violator was admittedly informal. McDermed reviewed a file of evidence, made his decision, and signed the order, all without input from Bratton. McDermed was not, however, acting as an agent of either party, nor was he making a decision about a claim against his employer. Despite the lack of formality, McDermed was acting as an impartial judge and rendered his decision after reviewing and weighing evidence. The administrative hearing order was a final order of a governmental agency acting in a quasi-judicial capacity and was thus appealable.

*Failure to Exhaust Administrative Remedies*

As part of his argument that the administrative hearing order was not appealable, Bratton also asserts the district court incorrectly found his failure to exhaust administrative remedies barred his claims under §1983. Bratton is correct that failure to exhaust administrative remedies does not bar claims under §1983 brought in state or federal court. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 17, 20 P.3d 39 (2001). The court, however, did not find Bratton could not bring claims under §1983 due to his failure to appeal; it found he could not bring state tort claims based on his failure to appeal. In *Kirtdoll*, the court found the plaintiff's failure to appeal an order finding him in violation of a nuisance ordinance and granting the city permission to abate the nuisance precluded his tort claims. 2007 WL 570293, at * 2 (citing *Francis v. U.S.D. No. 457*, 19 Kan. App. 2d 476, 481, 871 P.2d 1297 ("Where the remedy available is a statutorily provided appeal, a collateral attack on the offending decision is not permitted."), *rev. denied* 255 Kan. 1001 (1994). Bratton does not raise the court's finding regarding his tort claims on appeal.

In conclusion, we hold the City's habitual violator ordinance exceeded the authority of the state enabling statutes and reverse the district court's finding on this issue. We affirm the district court's finding that the ordinance was not unconstitutional on its face. On the other hand, we hold that the ordinance was unconstitutional as applied to Bratton because the City failed to provide adequate due process prior to entering Bratton's land and removing or destroying his property. Furthermore, the City may be held liable for this violation of Bratton's procedural due process rights under §1983. Thus, we reverse the district court's findings on these issues. Finally, we affirm the district court's findings that the City is not liable for any torts under the KTCA and the administrative hearing order was an appealable order.

Affirmed in part and reversed in part.